IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, U.S. DEPARTMENT OF LABOR,<br><br>    Plaintiff,<br><br>v.<br><br>LIYING LI AND JIAN YUN ZHENG, individually; KING BUFFET OF IA, INC. d/b/a KING BUFFET; KING BUFFET OF AMES, INC.; BUFFET MONGOLIAN GRILL, INC. d/b/a MONGOLIAN BUFFET; and STEAK BUFFET, INC.,<br><br>    Defendants. | Case No. 15-136<br><br><br><br><br><br><br><br><br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................2

FACTUAL BACKGROUND................................................................2

ARGUMENT................................................................9

    I.    THE DEPARTMENT OF LABOR CANNOT ESTABLISH ALL EMPLOYEES WORKED 72 HOURS PER WEEK............................10

        A.    Employees Who Were Not Injured Cannot Recover................................10

        B.    The Restaurants Kept Accurate Time Records for Non-Spanish Speaking Employees that Negate Any Claim for Back Pay.....................13

        C.    The Department's Evidence is Unreliable and Cannot be Offered as Representative Evidence for All employees............................16

    II.    THE DEPARTMENT OF LABOR IMPROPERLY COMPUTED THE TIP CREDIT FOR TIPPED EMPLOYEES. ................................23

    III.    THE DEPARTMENT CANNOT RECOVER FOR BACK WAGES OUTSIDE THE STATUTE OF LIMITATIONS................................24

CONCLUSION................................................................24

## PRELIMINARY STATEMENT

On April 28, 2015, the Department of Labor (the "Department") brought suit to recover back wages allegedly owed to 38 current and former employees of Mongolian Grill, Inc. d/b/a Mongolian Buffet ("Mongolian Buffet") and King Buffet of IA, Inc. d/b/a King Buffet ("King Buffet") (collectively, the "Restaurants"). The Department claims employees are owed hundreds of thousands of dollars, yet has no evidence to support the vast majority of its claims. The Department based its conclusion on the testimony of a few "Spanish speaking" employees while, quite literally, disregarding evidence from any employee of Chinese descent—even when they are seeking recovery for the very employee who disavows their claim.[1] Indeed, in some instances, neither the Spanish speaking nor the Chinese employees provides support for the Department's conclusions. Because the Department cannot resist summary judgment by saying witnesses must be lying, particularly based on ethnic background, partial summary judgment is required.

## FACTUAL BACKGROUND

Mongolian Buffet and King Buffet were Ames, Iowa, restaurants owned and operated by individual defendants Liying Li ("Annie") and Jian Yun Zheng ("Henry"). J. Zheng Dep. at 10 (App. at 2). Annie and Henry immigrated to the United States from China and, upon moving to Iowa in 1997, started a restaurant with family. J. Zheng Dep. at 6 (App. at 1). Annie and Henry have middle school educations and speak very little English. J. Zheng Dep. at 6; L. Li Dep. at 10 (App. at 1, 4). Neither has taken any English courses. J. Zheng Dep. at 6; L. Li Dep. at 10 (App.

---

[1] Although Defendants do not wish to separate or categorize people based on ethnicity or national origin, the Department's conclusions regarding credibility in this case fall along such lines. Thus, because the Department seeks to rely on the information provided by Spanish speaking employees to contradict the testimony of Chinese employees and the Department's documents refer to the two groups of employees by the terms "Spanish speaking" and "Chinese," Defendants will use similar terms for consistency.

at 1, 4).  Henry rates his English skills at 1-2 out of 10, while Annie rates hers as only slightly

better.  J. Zheng Dep. at 6-7; L. Li Dep. at 10 (App. at 1, 4).  Yet, Henry and Annie managed to

keep two restaurants operating and paid numerous employees good wages.  (*See, e.g.,* App. at 125-

1382)  The Restaurants were family run and were staffed, in part, by Annie's and Henry's family,

including their parents, siblings and other relatives.  (App. at 119-120)   Now, the Department

somehow concludes, contrary to time records and contrary to the employees' own statements, that

Annie and Henry owe hundreds of thousands of dollars in back wages.

      For the time covered by the Department's investigation, Henry primarily was responsible

for Mongolian Buffet and was in charge of hiring, firing and instructing employees.  J. Zheng Dep.

at 12 (App. at 2).  Annie was responsible for King Buffet, although she also worked several hours

each week at Mongolian Buffet.  L. Li Dep. at 33, 54 (App. at 5, 6).  The Restaurants managed to

operate under remarkable scrutiny from the Department.  The Department conducted wage and

hour investigations at King Buffet four times while the individual Defendants operated it—in 2002,

2005, 2006 and 2014.  (App. at 8-16)  The 2002 investigation was initiated as part of a full service

restaurant initiative and resulted in $509.24 of back wages as a result of improperly computing

three employees' overtime.  (App. at 17-22)  Because of Annie and Henry's limited English skills,

during the closing conference after the 2002 investigation, the Department contacted Ms. Ying Sa,

an Iowa accountant from China, to interpret.  (App. at 15)  The 2005 investigation—a follow up

on the 2002 investigation—resulted in $257.60 of back wages because the restaurant paid overtime

based on a semi-monthly period rather than weekly.  (App. at 17-22)  The 2006 investigation,

which followed up the two prior investigations, found absolutely no violations.  (App. at 28) Now,

after largely clean reviews, the Department suddenly claims many ***hundreds of thousands of***

*dollars* are due and virtually every employee—contrary to the employees' own statements— worked 72 hours per week without overtime.  (App. at 8-16, 30-38, 93-100)

In March 2014, the Department initiated an investigation after receiving a complaint from two former Mongolian Buffet employees.  (App. at 30)  The Department conducted a cold call visit at Mongolian Buffet on March 6, 2014, and, at that time, interviewed multiple employees, Henry and Annie. (App. at 31) Although the Department provided an interpreter to all interviewed employees and previously provided Henry and Annie an interpreter, it provided no interpreter to Henry or Annie this time.  J. Zheng Dep at 53; L. Li Dep. at 88 (App. at 3, 7).  All Spanish speaking[2] employees were given the opportunity to review statements in their native language. (App. at 39-73)  All still available witnesses confirmed they would not be comfortable being interviewed or signing statements in English.  E. Paredes Dep. at 26-27; G. Andrade Dep. at 26; L. Moreira Dep. at 35-36 (App. at  79-80, 85, 92)  After the initial Mongolian Buffet investigation, the Department expanded its investigation to include King Buffet. On March 6, 2014, investigators visited the King Buffet and interviewed employees.  (App. at 8-16)  As at Mongolian Buffet, the Department offered interpretive services to employees but not Annie, who is not proficient in spoken or written English.  L. Li Dep. at 10 (App. at 4).

Throughout its investigation, the Department repeatedly placed the employees into two groups—Spanish speaking employees and Chinese employees.  The Department quite literally accepted the most extreme statement from any Latino employee, even when contradicted by other Latino employees, and rejected, literally, every single Chinese witness's statement  (App. at 8-16,

---

[2]  The Department of Labor withheld the names of the Chinese employees interviewed and any signature indicating the statements were reviewed, if one exists, is also redacted.  (App. at 105-113)  Accordingly, Defendants are unable to determine whether they were provided the benefit of reviewing written statements in their native language.

30-38)  Although Defendants will contest the Spanish-speaking employees' claims at trial and show they are inconsistent with common sense, Defendants do not seek summary judgment on the Department's claims for back wages for Spanish speaking employees.[3]  Defendants provide evidence regarding the pay practices for Spanish speaking employees solely to demonstrate the impropriety of using their experiences as representative of pay practices of all *other* employees in dissimilar positions, while rejecting each and every statement from a Chinese employee as dishonest.

Evidence the Department gathered confirms more than language and ethnicity separated Spanish speaking and Chinese employees.  The Spanish speaking employees, except Gloria Andrade, discussed below, received some or all wages in cash.  These employees were full-time working a regular schedule—6 days a week with the same day off each week.  Dep. at 12 (App. at 82).   At trial, Defendants will explain the Restaurants slow down markedly at non-meal periods and offer evidence that employees received large breaks during their days—as reflected in pictures of employees sleeping.  (App. at 101-104)  Although not relevant for purposes of this Motion, the Department apparently intends to argue these same employees worked straight through from open to close.  (App. at 8-16, 30-38)  Time sheets for these employees at Mongolian Buffet reflect they were paid for their recorded time via check (with the remainder paid in cash).  (App. at 912-936, 940-992, 1086-1096, 1102-1125, 1194-1212, 1215-1360, 1365-1382)  Time sheets for these employees at King Buffet reflect their daily work hours.  (App. at 735-749, 754-794, 796-811) Employees at both Restaurants signed a statement each pay period acknowledging hours worked

---

[3] Unlike their Chinese co-workers, whom they could not identify, the Department's witnesses were at least familiar with the names of their Spanish speaking co-workers.  Accordingly, solely for summary judgment purposes, Defendants do not contest the potential dispute of facts as to these employees.

in the pay period, their hourly rate and their total pay.  (App. at 750-753, 795, 812-815, 937-939, 1097-1101, 1213-1214, 1361-1364)

Only one Spanish speaking employee (Andrade) worked outside the kitchen and was not at least partially compensated in cash.  She claims a wholly unique pay structure not claimed by anyone else whereby she somehow was paid out of her husband's wages.  (App. at 55-58).  She is, thus, unique in her claims.  Further, although Andrade claims she worked full-time, one of the Department's other witnesses, Emanuel Paredes, testified Andrade was part-time and worked only the lunch *or* dinner shifts.

> Q.  What was different about when Ms. Andrade worked versus when you worked?
> A.  She was working half days.
> Q.  Did she work in the first part of the day or the latter part of the day?
> A.  It was different.  Sometimes in the morning, sometimes in the afternoon.
> Q.  So would she work maybe either lunchtime or dinnertime, for example?
> A.  Yes.

E. Paredes Dep. at 9 (App. at 75).  Andrade's time sheets are consistent with Paredes' testimony, were signed by Andrade and correspond with her paychecks.  Andrade Dep. at 31-32 (App. at 85A-86, 1365).  Nonetheless, given Andrade's claims, the Restaurants do not seek summary judgment with respect to Ms. Andrade.  (Remarkably, the Department discounts Paredes' testimony as to Andrade because she worked as a server and he worked in the back.  Gonzalez Dep. at ___ (App. at ___).[4]  Of course, the Department then used statements of kitchen workers to reject statements from literally every Chinese employee, many of whom were servers.)

---

[4] The transcript for this deposition is not yet available, thus, the citation will have to be supplemented.

All other employees, including the Chinese employees, were paid differently and subject to different pay practices than the Spanish speaking employees.  All other employees received all wages on a paycheck and tipped employees received tips at each shift's end.  (App. at 145-179, 195-220, 238-269, 286-313, 329-356, 372-399, 415-442, 458-485, 488, 495-506, 509, 517-531, 559-601, 605-606, 627-655, 675-707, 711-734, 817-818, 831-867, 872-879, 887-900, 906-911, 1426-1586)  These employees recorded their time daily on time sheets signed and verified each month.  (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586)  They were paid consistent with their recorded and verified hours.  (*Compare* App. at 145-179, 195-220, 238-269, 286-313, 329-356, 372-399, 415-442, 458-485, 488, 495-506, 509, 517-531, 559-601, 605-606, 627-655, 675-707, 711-734, 817-818, 831-867, 872-879, 887-900, 906-911, 1426-1586 *with* App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586)  Employees confirm they recorded their time and were paid for hours worked.  (App. at 105-113, 1383-1392)  Employees in this group confirm they worked varying schedules—not six days a week, twelve hours a day.  (Id.)

The Department apparently divided non-Spanish speaking employees into two groups—separating Chinese and Caucasian employees.  Although Caucasian employees were paid in the same manner as Chinese employees and likewise indicated they worked part-time (*see* App. at 112), the Department accepted the Caucasian employees' status as part-time employees while concluding that Chinese employees that stated the same thing must be lying.  The Department did not include any of the five Caucasian employees on the list of back wages for either restaurant.

(*Compare* App. at 93-100 *with* App. at 1426-1586)  Indeed, the Department does not even appear to have interviewed four of the five Caucasian employees to ask whether their pay accurately reflected hours worked.  (*See* App. at 51-54)  Ignoring the Caucasian employees who worked part-time, the Department refers exclusively to two groups—the Spanish speaking and Chinese employees—and assumes that, unlike the Caucasian employees, Asian employees who confirm they worked part-time are lying because nobody did (except, of course, the Caucasian employees who it believes).  (*See* App. at 8-16, 30-38)

Ultimately, the Department's Investigator Maria Gonzalez drew several conclusions that form the basis of the Department's claims:

- Investigator Gonzalez concluded time records for Chinese and Spanish speaking employees were not accurate and should be disregarded.  (*See* App. at 8-16, 30-38)  Investigator Gonzales reached this conclusion despite many employees the Department interviewed confirming they recorded their time when they worked.  (App. at 105-113)  Indeed, the time sheets the Department reviewed were signed by the employees.  (*See* App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586)  Although no reasoning is provided in her report, Investigator Gonzalez apparently accepted that Caucasian employees accurately recorded their time, finding they were not owed back wages.  (*See* App. at 93-100)

- Investigator Gonzalez concluded **_all_** Chinese and Spanish speaking employees— regardless of their job's nature, regardless of their part-time status, and including those who confirmed under oath they did **_not_** work 6 days a week, 12 hours a day—worked 6 days a week, 12 hours a day.  To do so, she had to, without basis, disregard their signed verification of hours worked, their statements to the Department, and, now, their signed declarations.  (App. at 8-16, 30-38)

- With respect to King Buffet, Investigator Gonzalez also concluded "Based on the information gathered through the interviews of the Spanish speaking employees, it was determined that the Chinese employees were receiving check and cash payments for their hours worked."  (App. at 8-16, 30-38)  Investigator Gonzalez reached this conclusion despite all Chinese employees who had worked a full pay period telling her

they received pay by check.[5]  (App. at 105-113)  Indeed, Investigator Gonzalez reached this conclusion despite the fact that Spanish speaking employees actually did *not* tell her this was how Chinese employees were paid.  (App. at 39-73 )

- Investigator Gonzalez concluded that at least Spanish-speaking kitchen workers were paid a salary and, therefore, were owed the overtime premium for all hours over 40 in any workweek.  (App. at 8-16, 30-38, 1393-1424)

- With respect to servers, Investigator Gonzalez concluded that "due to the discrepancies in the records and statements provided," the tip credit would only be provide for the "hours shown on the payroll" and calculated back wages due without allocating the tip credit across all hours claimed by the Department.  (App. at 8-16, 30-38, 1393-1424)

After its investigation, the Department concluded all Spanish speaking and Chinese employees worked 72 hours per week and calculated back wages owed of $597,258.86—even for multiple employees who confirm the Department is just flat out wrong.  (Petition)  Because the Department reached its conclusion based on speculation and unsupported assumptions and does not have evidence to support the majority of its claims, partial summary judgment is required to allow this case to be narrowed to issues where actual admissible contested evidence exists.

## ARGUMENT

The legal issues in this brief are straightforward:  Can the Department use inconsistent testimony from employees in different restaurants who hold different positions and were subject to different pay policies and practices to override the express sworn statements from employees as to their own experiences?  When evidence shows wild disagreement, can liability simply be assumed to non-testifying witnesses when testifying witnesses have no independent knowledge of the pay practices or work schedules of other employees, and, indeed, do not even know their names?  Can the Department overcome its lack of evidence, and contradiction of existing evidence,

---

[5] One employee who had not worked long enough to receive a paycheck said she only received cash.  Indeed, she only would have received her tips because she had not yet reached payday. (App. at 105-113)

with the indefensible and disturbing assumption that all Chinese employees must be lying while simultaneously accepting identical testimony from Caucasian employees?   Because the law requires actual, admissible evidence to avoid summary judgment, not hearsay, conjecture and outright disregard of evidence, Defendants' Motion should be granted.

## I.   THE DEPARTMENT OF LABOR CANNOT ESTABLISH ALL EMPLOYEES WORKED 72 HOURS PER WEEK.

The Department's back wage calculations are based on a faulty assumption unsupported by admissible evidence:  all employees worked 12 hours a day, 6 days a week, even when they say otherwise.  Neither the employer's records, signed by the employees, nor the employees, support this assumption.   Indeed, myriad witnesses expressly disavow the Department's assumption. (App. at 105-113, 1383-1392)  Presumably, the Department intends to rely on its investigation and/or the testimony of other employees (despite records and testimony to the contrary) to establish *all* employees—in different jobs at different restaurants—worked 72 hours per week—even when they confirm otherwise.   Due process requires more.   The Department cannot rely on unrepresentative, unreliable testimony because (1) the majority of employees who can be located expressly disagree with the Department's position, (2) the employer kept time records for the employees that are either unrebutted or, in fact, confirmed by the employees in question, and (3) the evidence on which the Department intends to rely is not sufficiently representative or reliable.

### A.   Employees Who Were Not Injured Cannot Recover.

First, the Department cannot recover back wages for any employee who disavows the Department's claim that he or she worked 72 hours per week.  Although in some circumstances a court can award damages based on "reasonable inference," the standard is only applicable where (1) the employer's records are inaccurate or inadequate, and (2) "the employee has proved that he has performed work and has not been paid in accordance with the statute."  *Anderson v. Mt.*

*Clemens Pottery Co.,* 328 U.S. 680, 688 (1946). As the Supreme Court explained in *Mt. Clemens*, the rule allowing a party to establish back pay based on reasonable inference applies only where "damage is [] certain" and "[t]he uncertainty lies only in the amount of damages arising from the statutory violation by the employer." *Id.* The Supreme Court recently confirmed the basic necessity of proving fact of injury in *Tyson v. Bouaphakeo,* 136 S.Ct. 1036 (2016). *Id.* at 1043 ("each employee had to show he or she worked more than 40 hours a week, inclusive of time spent donning and doffing, in order to recover"), 1046 ("To be entitled to recovery, however, each employee must prove that the amount of time spent donning and doffing, when added to his or her regular hours, amounted to more than 40 hours in a given week.").

Here, numerous employees confirmed they did ***not*** work 72 hours per week. (App. at 105-113, 1383-1392) Indeed, seven witnesses the Department interviewed, then simply disregarded, stated they did not work full-time and certainly not 72 hours per week. (App. at 105-113) Further, ten employees signed declarations attesting they did not work 72 hours per week and are not owed wages. (App. at 1383-1392) Caucasian and Chinese employees alike so stated. Although the Department accepted that Caucasian employees worked part-time, it rejected every Chinese employee's statement about his or her own work hours. The Department cannot overcome summary judgment merely by claiming witnesses must be lying. *E.g., Walton v. McDonnell Douglas Corp.,* 167 F.3d 423, 428 (8th Cir. 1999) ("[T]o defeat summary judgment, Walton must present affirmative evidence, not simply contend a jury might disbelieve MDC's evidence."); *Lauth v. Covance, Inc.,* No. 1:14-CV-136-WTL-TAB, 2016 WL 3269043, at *14 (S.D. Ind. June 14, 2016) ("[A]bsent evidence that shows a witness's testimony is false, speculation that the witness is lying cannot be used to defeat summary judgment."); *Wang v. United States,* No. 15-C-0591, 2015 WL 7283134, at *3 (E.D. Wis. Nov. 17, 2015) ("[A] party may not defeat a motion for

summary judgment by suggesting that one of the defendant's witnesses may be lying."); *BFI Waste Sys. of N. Am. LLC v. Freeway Transfer, Inc.*, 867 F. Supp. 2d 1037, 1047 (D. Minn. 2012) ("The mere possibility that a witness's trial testimony will not be believed is never a sufficient reason to deny a summary judgment motion premised on that testimony."); *Fernandez v. China Ocean Shipping (Grp.) Co.*, 312 F. Supp. 2d 369, 378 (E.D.N.Y. 2003), *aff'd sub nom. Fernandez v. China Ocean Shipping (Grp.) Co.*, 94 F. App'x 866 (2d Cir. 2004) ("Merely '[t]o assert that [a] witness[] may be lying, without any evidence to contradict the witnesses' testimony cannot defeat a motion for summary judgment.") (quoting *Brown v. Johnson & Johnson Consumer Prods.*, 1994 WL 361444, at *4 n.3 (S.D.N.Y. July 11, 1994)); *Laven v. Flanagan*, 695 F. Supp. 800, 812 (D.N.J. 1988) ("It is not sufficient for plaintiff to merely contend that defendant's affidavits may be untruthful – if that were the sole basis to defeat a motion for summary judgment, then none would ever be granted.").

The Department has no evidence to support a claim for back wages for these employees, and Defendants are entitled to summary judgment for any claimed wages for Jirong Li, Xiao Qi Chen, Lan Lin, Zhao Shui Li, Zeng Xing Li, Li Rong Chen, Ai Mei Li, Shi Zhao Zheng, Xiu Ying Zhu and Liang Fang Dong, as well as the unnamed employees who provided the statements contained at Appendix pages 105 through 113.[6]   Where, as here, no admissible evidence

---

[6]  The Department asserts the informant's privilege with respect to the names of the individuals who provided the statements at pages 105 through 113.  (App. at 1589-1590)  Although the Department can use the informant's privilege to protect individuals who cooperate in the Department's investigation, its purpose certainly is not to hide information undercutting the Department's case. *See Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989) ("The underlying concern of the doctrine is the common-sense notion that individuals who offer their assistance to a government investigation may later be targeted for reprisal from those upset by the investigation.  The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.").  Here, these individuals all signed statements that do ***not*** support any claim they worked 72 hours per week and, indeed, contradict it.  (App. at 105-113)  Despite this, the Department uniformly used 72 hours per week to demand

establishes the employee performed work for which he or she was not paid, back pay cannot be awarded. *Tyson,* 136 S.Ct. at 1043, 1046; *Mt. Clemens,* 328 U.S. at 688; *Carmody v. Kansas City Bd. of Police Comm'rs,* 713 F.3d 401, 407 (8th Cir. 2013) (denying recovery even under *Mt. Clemens* standard because plaintiffs failed to produce evidence of "a single hour worked over forty hours that did not receive overtime wages or flextime," and concluding the plaintiffs' "unsupported estimations of the unpaid hours due are not enough").

> B.   The Restaurants Kept Accurate Time Records for Non-Spanish Speaking Employees that Negate Any Claim for Back Pay.

The Department must show employees actually worked time for which they were not paid. *Tyson,* 136 S.Ct. at 1043, 1046; *Mt. Clemens,* 328 U.S. at 688.  With respect to the employees who were paid solely with a payroll check (and tips, where applicable) (for summary judgment purposes, this group is referred to as the "Chinese employees"), the Department failed to meet its burden.[7]  Records maintained by the Restaurants do not reflect the Chinese employees working 72 hours per week.  (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586)  To the contrary, records *the employees signed* confirm the employees primarily working part-time.  (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558,

---

back wages.  (*See* App. at 8-16, 30-38)  The Department cannot cherry pick evidence by simply ignoring evidence it does not like to calculate a back wage number it knows to be incorrect.  The Court cannot award damages for an injury not suffered. *See Tyson,* 136 S.Ct. at 1043.

[7]  Although the Restaurants do not concede liability relating to the Spanish speaking employees who were paid a combination of cash and checks, for purposes of summary judgment, the Restaurants do not dispute that the pattern and practice of record keeping for these employees differed from other employees and a material dispute of fact exists as to whether they can meet the *Mt. Clemens* standard.

602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586) Numerous Chinese employees confirm they worked part-time. (App. at 105-113, 1383-1392) Although the *Mt. Clemens* standard allows employees to rely on "reasonable inference" in certain circumstances, it does not allow unreasonable inference and does not aid the Department here where it seeks to disregard what the employees actually said.

First, as the Supreme Court recognized in *Mt. Clemens,* where the employer kept accurate time records, the employee's burden to establish time worked is easy, it may simply ask the employer for the records. *Mt. Clemens*, 328 U.S. at 688. Only when the employer fails to keep accurate records may the employee rely on "reasonable inference." *Id.* The Restaurants provided time sheets reflecting time worked on a daily basis for Chinese employees.[8] (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586) Employees signed these time sheets. *Id.* Not a single Chinese Employee disputes the accuracy of these time sheets. (App. at 105-113, 1383-1392) Although the Department withholds names of employees who contradict its version of events, statements provided to the Department confirm employees recorded their time:

> I did record the number of hours that I worked on a sheet of paper at the front desk. I recorded the hours myself. I believe that the other [redacted] employees recorded their hours as well. My hours recorded were correct, and I was paid for those hours.

(App. at 112)

---

[8] The FLSA requires employers keep records reflecting the total daily hours worked by an employee. 29 C.F.R. § 516.2(a)(7). The time sheets maintained by employees reflected daily hours worked. (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586)

> I work an average of three days weekly, eight hours daily for 24 hours weekly. I
> arrive at 10:30 am and leave around 6:30 pm. This is my constant schedule. … I
> record my time on a time sheet. I enter when I arrive and leave on a monthly
> timesheet. I receive a break at 1pm for an hour and then a short break at 5-5:15….I
> have not worked over 40 hours weekly.

(App. at 108)

> I work part-time for 15 hours per week. I work from 11am-2pm. I write my time
> down at the front desk when I arrive, but not when I leave. I write my time down
> for arrival so that they know I was here. I receive a 20-minute break. I have not
> worked for more hours than I am paid.

(App. at 111) Employees routinely confirm they recorded their time and were paid for all hours

worked. (App. at 105-113, 1383-1392) To prove its case, the Department insists all Chinese

employees simply are not telling the truth. This cannot defeat summary judgment. *Walton*, 167

F.3d at 428; *Lauth*, 2016 WL 3269043, at *14; *Wang*, 2015 WL 7283134, at *3; *Fernandez*, 312

F. Supp. 2d at 378; *Laven*, 695 F. Supp. at 812.

The Department's evidence is not sufficient to challenge the Chinese employees' time

records—particularly when they have to claim <u>every</u> Chinese employee is lying to do so. The

Spanish speaking employees on whom the Department relies were not part of the same pay

practices, in many instances did not even work at the same location. The Department admits

kitchen workers are unreliable as to hours worked by servers. Gonzalez Dep. at ___ (App. at ___).

Thus, the Department can prove the Chinese employees' hours worked by relying on the

employer's records. *Mt. Clemens* 328 U.S. at 688. The Department may not rely on "reasonable

inference" without proving the time records are inaccurate. When time records are relied upon,

there is no evidence to support the Department's back wage calculations for the Chinese

employees.

Even if the Department need not first prove the time records are inaccurate to rely on *Mt.*

*Clemens*, summary judgment is still appropriate for the Chinese employees. *Mt. Clemens* allows

an employer to overcome evidence offered by an employee by providing records showing time actually worked. *Mt. Clemens*, 328 U.S. at 687. Here, the Chinese employees offer no evidence of their time worked *other than the employer's own records and statements confirming them.* The Restaurants submitted detailed records showing the time actually worked by employees. (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586) These records reflect Chinese employee's daily time worked. *Id.* The Chinese employees were paid for this time. (App. at 145-179, 195-220, 238-269, 286-313, 329-356, 372-399, 415-442, 458-485, 488, 495-506, 509, 517-531, 559-601, 605-606, 627-655, 675-707, 711-734, 817-818, 831-867, 872-879, 887-900, 906-911, 1426-1586) The Chinese employees overwhelmingly confirm they (1) recorded their time, and (2) were paid for the time worked. (App. at 105-113, 1383-1392) The Department has no reliable evidence to call these records into question—other than assuming Chinese employees lie, which is wholly improper, and other people, who do not know their names, thought they worked more. *See Marshall v. R & M Erectors, Inc.*, 429 F. Supp. 771, 779-80 (D. Del. 1977) (holding back pay award was not warranted where the Secretary failed to present reliable evidence regarding eleven "unidentified" employees); *see also Walton*, 167 F.3d at 428; *Lauth*, 2016 WL 3269043, at *14; *Wang*, 2015 WL 7283134, at *3; *Fernandez*, 312 F. Supp. 2d at 378; *Laven*, 695 F. Supp. at 812. Accordingly, even under the *Mt. Clemens* standard, the Restaurants have met their burden of showing the Non-Cash employees were accurately paid.

      C.    The Department's Evidence is Unreliable and Cannot be Offered as Representative Evidence for All employees.

Numerous witnesses contradict the Department's assumption that everyone worked 72 hours per week. Despite this, Investigator Gonzalez relied on the interviews of nine witnesses,

three at King Buffet and six at Mongolian Buffet, all of whom are Spanish speaking, all but one

of whom worked in the kitchen and all of whom claim they were paid differently than the Chinese

employees.  Although a representative group of employees or testimony from an investigator can

be used to present evidence in certain circumstances, the evidence on which the Department relies

is not appropriate.

To support the claim that employees worked 72 hours per week, Investigator Gonzalez

relies exclusively on evidence gathered from Spanish speaking employees—without any evidence

they even could communicate with the Chinese employees or knew their names.  (*See* App. at 8-

16, 30-38)  Indeed, to conclude all employees worked 72 hours per week, Investigator Gonzalez

necessarily disregarded interviews from Chinese and English speaking employees in favor of

information provided by Spanish speaking employees. (*See* App. at 105-113)  All other witnesses

and all employer records negate the Department's conclusion.  App. pp. 125-144, 180-194, 221-

237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-

558, 602603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-

1586).  Indeed, Investigator Gonzalez admits she never found enough employees at the Restaurants

to support her conclusion in that so many hours were worked.  Gonzalez Dep. at \_\_\_\_ (App. at

\_\_\_).  Representative evidence may only be used to the extent it is reliable.  *Reich v. S. Maryland*

*Hosp., Inc.*, 43 F.3d 949, 951-52 (4th Cir. 1995) (finding the "fairly representational" requirement

was not met where the Secretary failed to produce employee testimony on missed lunches from

several departments and employees from several departments who were awarded back wages

specifically testified they never missed lunch); *Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d

1234, 1251 (D. Or. 2014) (finding the court could not make a "just and reasonable inference" that

all employees worked a particular number of overtime hours based on witness employees who

"failed to establish that they consistently worked with enough of the non-testifying Exhibit A employees for a substantial period of time in performance of the same job"); *see also Tyson*, 136 S.Ct. at 1046-47.

> At trial, the Secretary bears the burden of proving that the evidence presented is sufficiently representative of the non-testifying claimants, therefore Defendants need only point out the absence of evidence to support the Secretary's case to prevail at summary judgment.

*Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1070-71 (D. Or. 2010), *as amended* (May 13, 2010). Whether the Department offers Investigator Gonzalez's testimony and report as evidence or evidence from the Spanish speaking employees, the fundamental question is the same: are Spanish speaking employees' statements reliable evidence of the Chinese employees' work hours. *Secretary of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991) ("Where the employees fall into several job categories, it seems to us that, at a minimum, the testimony of a representative employee from, or a person with first-hand knowledge of, each of the categories is essential to support a back pay award."); *Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1250 (D. Or. 2014) ("At a minimum however, when employees work in more than one job category, the testimony must be representative of the individuals within each category."). They are not—even remotely.

First, the Spanish speaking witnesses simply are not reliable representatives for Chinese employees. With the exception of Andrade, who other Department witnesses confirm was part-time, all Spanish speaking employees worked in the kitchen. (App. at 39-54, 59-73) The Chinese employees worked a variety of positions, including as servers in the front of the Restaurants. (App. at 105-113) The Spanish speaking employees who could be located for depositions literally could not identify a single Chinese employee by name except owner Henry. E. Paredes Dep. at 12-15; G. Andrade Dep. at 13-18; L. Moreira Dep. at 14-21 (App. at 76-77, 82-84, 89-90) Other than

generally saying "everyone" worked the same hours, the Spanish speaking employees who could be located for depositions could not say exactly what hours or days Chinese employees worked. (Id.)  The Spanish speaking employees never discussed wages or working hours with the Chinese employees. (Id.)  Indeed, the Spanish speaking employees on whom the Department relies made numerous assumptions about the Chinese employees that the Department found no evidence to support. (App at 39-73)  To provide reliable representative testimony, the witness must be able to attest to working conditions and pay practices of the employees on whose behalf his or her testimony is used. *See Reich*, 43 F.3d at 951-52 (concluding testimony not representative where representative testimony was not provided from all departments and witnesses in those departments contradicted claims); *Perez*, 68 F. Supp. 3d at 1251.  It is not enough to simply say "everyone" worked the same hours. *See Estate of Oliva v. New Jersey*, 579 F. Supp. 2d 643, 670 (D.N.J. 2008), *aff'd sub nom. Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788 (3d Cir. 2010) ("Plaintiff's vague assertions that "everyone" knew that Oliva complained are insufficient to create a triable issue of fact.").  The Spanish speaking employees simply do not have the knowledge to testify (or provide information for the Investigator's reliance) on behalf of the Chinese employees.

Second, the Department cannot rely on Investigator Gonzalez and her report to support its conclusion that all Spanish speaking and Chinese employees worked 72 hours per week.  An Investigator Gonzalez's report and conclusions are only admissible to the extent they are trustworthy and reliable.  Fed. R. Evid. 803(8)(B); *see also McClandon v. Heathrow Land Co. P'ship*, No. 6:08-CV-35-ORL-28GJK, 2010 WL 336345, at *4 (M.D. Fla. Jan. 22, 2010) ("However, reports of Government agencies are subject to scrutiny by the court, and those lacking trustworthiness should be excluded from evidence.").  The Department cannot recover damages

based on speculation. *Marshall*, 429 F. Supp. at 779-80 ("The Secretary arrived at an overtime amount for these employees apparently by taking the average overtime payment owed to the employees in whose behalf he made individual calculations. At trial, however, the Secretary made no effort to support the reliability of this method of approximation.  While the Secretary's burden of proof under these circumstances is relatively light, he may not recover on the basis of nothing more than pure speculation....the Court cannot ascertain justly or reasonably the length of employment or the weekly salaries of these employees.  Accordingly, without a plausible factual basis for the Secretary's speculation, the Court will not award back wages to the Secretary for the benefit of employees on whose behalf no evidence was presented at trial."); *see also Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006) ("speculation and conjecture are insufficient to defeat summary judgment."); *Hedberg v. Indiana Bell Tele. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) (internal citations omitted) ("[S]peculation does not meet a party's burden of producing some defense to a summary judgment motion.  Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").  Investigator Gonzalez made the decision to believe the Spanish speaking employees regarding the work hours of the Chinese employees, despite records to the contrary *and the Chinese employees' own statements making clear the Spanish speaking employees were wrong.* Investigator Gonzalez's conclusion regarding the work hours for Chinese employees is based on nothing more than speculation and must be disregarded.  *Id.*

Notably, Investigator Gonzalez provided no reasoning for her conclusion that the Spanish speaking employees must be accurate and the Chinese employees interviewed must have lied. (*See* App. at 8-16. 30-38) Nor did she provide any basis to believe that the Spanish speaking employees, who cannot even identify the Chinese employees by name, had sufficient knowledge to testify

regarding work conditions and hours of unknown and unidentified Chinese employees. *Id.* Indeed, had Investigator Gonzalez looked more closely at the Spanish speaking employees' claims, fundamental flaws would have become clear. For example, on March 19, 2016, when the Department conducted its investigation at King Buffet, there were five to seven employees working. (App. at 1425, 1587-1588) King Buffet employees (including Spanish speaking employees) uniformly confirmed that five to seven employees worked at King Buffet at any time. (*See* App. at 28, 39-43, 105-113) Yet, despite knowing that King Buffet was staffed by five to seven employees at any time, and, indeed, was staffed that way during the Department's investigation, Investigator Gonzalez disregarded time records and employee statements to conclude that *all eleven employees* worked 12 hours a day, 6 days a week. (App. at 8-16) Investigator Gonzalez's conclusion and the claims by the Spanish speaking employees at King Buffet that 11 employees worked 12 hours a day, 6 days a week at King Buffet is not only unsupported, it is contrary to the evidence.

Investigator Gonzalez's conclusion that Chinese employees at King Buffet received cash payments is similarly based on pure speculation. All Chinese employees received paychecks that correspond with their time sheets. (*Compare* App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586 *with* App. at 145-179, 195-220, 238-269, 286-313, 329-356, 372-399, 415-442, 458-485, 488, 495-506, 509, 517-531, 559-601, 605-606, 627-655, 675-707, 711-734, 817-818, 831-867, 872-879, 887-900, 906-911, 1426-1586) The Chinese employees interviewed by the Department and those who provided statements attest they were paid by check and in tips. (App. at 105-113) Even disregarding the Chinese employees' statements, however, as the Department invariably did, the

Spanish speaking employees provide no basis to support this conclusion.  Mr. Mendez-Cid and Mr. Rosalino Ortiz said nothing about how the Chinese employees were paid. (App. at 39-42, 47-50)  Paredes expressly said "I do not know how the servers are paid."  (App. at 43-46)  The Department offers nothing more than speculation to support its claims regarding the Chinese employees.  Speculation does not survive summary judgment.  *Marshal*, 429 F. Supp. at 779-80; *Bloom*, 440 F.3d at 1028; *Hedberg*, 47 F.3d at 932.

Indeed, Investigator Gonzalez provided no explanation for why employer records for Chinese employees were deemed unreliable (when the Chinese employees reported they accurately recorded their time) yet the same records for Caucasian employees were apparently acceptable. Absent some reasoned explanation, there is simply no justification for making a sweeping generalization regarding all Chinese employees, including those that fluently speak and write English (*see* App. at 105-113) and disregard their time records while accepting as accurate all records kept by Caucasian employees—who said the very same things.  Of the employees who can be located, only three—all from just one restaurant—support some aspect of the Department's case—while simultaneously contradicting each other's stories.  In contrast, 10 of the 13 employees who can be located verify the Department is flat out wrong as to them.  (App. at 105-113, 1383-1392)  Indeed, multiple employees expressly told the Department it was flat out wrong at the time. (Id.)  Remarkably, the Department's investigator simply assumes any employee who speaks Chinese **must be lying,** and the purported experiences of others can be extrapolated to people whose names they do not even know.  The Department then seeks recovery for those employees who told them they were fully paid!  Hearsay and supposition do not support extrapolating to employees in dissimilar circumstances and summary judgment is proper for all employees except the Spanish speaking employees

II.   **THE DEPARTMENT OF LABOR IMPROPERLY COMPUTED THE TIP CREDIT FOR TIPPED EMPLOYEES.**

In calculating claimed back wages, the Department only applied the tip credit to hours for which servers were paid on their pay checks. (App. at 8-16, 30-38) ("Due to discrepancies in the records and statements provided, it was determined that credit would be provided for the hours shown on the payroll. The full minimum wage was computed for the balance of the true number of hours worked."). Of course, as discussed above, there is no basis to challenge the hours paid on the paychecks of the Chinese employees making the Department's calculations irrelevant as to them. To the extent back wages are owed, however, the tip credit should be applied across all hours worked, not only those reflected on the employee's paystubs.

The FLSA lays out two conditions for an employer to take the tip credit: (1) the employer must inform the employee that the employee will be paid a reduced minimum wage; and (2) all tips received must be retained by the employee unless pursuant to a valid tip pool. 29 U.S.C. § 203(m). The Department has not challenged the Restaurants' right to take a tip credit. (*See* Petition) (Indeed, the Department's witness, Andrade, confirms she retained her tips and they are reflected on her paystubs). (App. at 55-58) Rather, the Department has limited the tip credit only to those hours for which employees were paid on pay checks from the Restaurants. (App. at 8-16, 30-38) Thus, the Department claims all other hours it claims employees worked must be paid at the full minimum wage, not accounting for the tip credit. This is contrary to the law. *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1321 (1st Cir. 1992), *as amended* (July 31, 1992) (reducing backwages owed by amount of tip credit); *Vancamper v. Rental World, Inc.*, No. 6:10-CV-209-ORL-19, 2011 WL 1230805, at *11 (M.D. Fla. Mar. 31, 2011) (recognizing back wages would be reduced by any tip credit employer was entitled to claim); *see also Chao v. Min Fang Yang,* No. CIV. 05-2563 JPM/TMP, 2007 WL 7209596, at *3 (W.D. Tenn. Aug. 13, 2007) (recognizing tip

credit reduction would have been appropriate but for failure to provide tip-credit notice).  Any back wages to tipped employees must apply the tip credit.

## III.    THE DEPARTMENT CANNOT RECOVER FOR BACK WAGES OUTSIDE THE STATUTE OF LIMITATIONS.

The Department demands damages "for the period March 5, 2012 to March 24, 2014, and in such further amounts as the Court may find due after March 24, 2014." (Complaint at 5)  The Department seeks damages outside the applicable statute of limitations.  Accordingly, summary judgment is appropriate for damages claimed outside the statute of limitations.

FLSA claims are subject to a two-year statute of limitations unless the cause of action arises from a willful violation in which case the statute of limitations is three years.  29 U.S.C. § 255(a). "An action is commenced under the FLSA when a party files suit." *Redman v. U.S. W. Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998).  Thus, it is the date the Department filed suit, not the date the Department commenced its investigation that is relevant in determining the appropriate statute of limitations.  Claims are unequivocally barred if they accrued more than two years prior to the date the Department filed suit.  *Id.*; 29 U.S.C. § 255(a).  The Department filed this action on April 28, 2015, more than three years after it initiated its investigation and more than three years after the beginning of the period for which it seeks damages—March 5, 2012.  Before one even considers the willfulness issue (which Defendants will dispute at trial) any claim for damages prior to April 28, 2012, must be dismissed.

## CONCLUSION

Defendants are entitled to summary judgment with respect to any former employee who expressly stated they did not work 72 hours per week and/or that they accurately recorded and were paid for their time.  The Department cannot establish these employees suffered injury and therefore recovery is inappropriate.  Additionally, Defendants are entitled to summary judgment

for all Non-Cash employees (except Gloria Andrade) because the Department has no evidence to support its claim that these witnesses worked 72 hours per week when they overwhelmingly say otherwise, time and time again.  Absent such proof, no back wages are owed.  Finally, Defendants are entitled to summary judgment for all wages sought outside the applicable statute of limitations.

Respectfully submitted,

BELIN McCORMICK, P.C.

By _____
James R. Swanger
    Michael R. Reck                          *Lead Counsel*
    Kelsey J. Knowles

666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone:  (515) 283-4645
Facsimile: (515) 558-0645
E-mail:    jrswanger@belinmccormick.com
            mrreck@belinmccormick.com
            kjknowles@belinmccormick.com

ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties to this action by serving a copy upon each party listed below on _June 24_____, 2016, by

☑ Electronic Filing System    ☐ Other _____

M. Patricia Smith
Christine Z. Heri
H. Alice Jacks
Traci Martin
United States Department of Labor
Office of the Solicitor
Two Pershing Square Building
2300 Main Street, Suite 1020
Kansas City, MO  64108

Signature: _____

M1614\0001\(02436128)