IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| THOMAS E. PEREZ, | ) | |
|---|---|---|
| SECRETARY OF LABOR, | ) | |
| U.S. DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-00136-RP-HCA |
| | ) | |
| LI YING LI and JIAN YUN ZHENG, | ) | |
| individually; KING BUFFET OF IA, INC., | ) | |
| d/b/a KING BUFFET; | ) | |
| KING BUFFET OF AMES, INC.; | ) | |
| BUFFET MONGOLIAN GRILL, INC., | ) | |
| d/b/a MONGOLIAN BUFFET; and | ) | |
| STEAK BUFFET, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**SECRETARY'S RESPONSE TO DEFENDANTS'
STATEMENT OF MATERIAL FACTS**

| | **Defendants' Facts** | **Secretary's Response** |
|---|---|---|
| 1. | Mongolian Buffet and King Buffet were Ames, Iowa, restaurants owned and operated by individual defendants Liying Li ("Annie") and Jian Yun Zheng ("Henry"). J. Zheng Dep. at 10 (App. at 2). | Undisputed. |
| 2. | Annie and Henry immigrated to the United States from China and, upon moving to Iowa in 1997, started a restaurant with family. J. Zheng Dep. at 6 (App. at 1). | Undisputed that Henry emigrated from China in 1992 and moved to Iowa in 1997. Disputed as to Annie, as she emigrated from China in 1997 and moved to Iowa in 2000. (Li Ying Li Deposition ("Li Depo.") at 5:9-11, 9:25-10:1, Secretary's Appendix ("Sec. App'x") 14-15.) Undisputed Henry and his brother opened King Buffet in 1997. (Jian Yun Zheng Deposition ("Zheng Depo.") at 8:23-9:5, Sec. App'x 3-4.) |
| 3. | Annie and Henry have middle school educations and speak very little English. J. Zheng Dep. at 6; L. Li Dep. at 10 (App. at 1, 4). | Undisputed that Henry and Annie have middle school education, but disputed that they "speak very little English." (Affidavit of Wage and Hour Investigator Marcy Boldman ("Boldman Affidavit") at ¶8, Sec. App'x 63; Maria Gonzalez Deposition ("Gonzalez Depo.") at 34:1-22, Sec. App'x 170.) |

| 4. | Neither has taken any English courses. J. Zheng Dep. at 6; L. Li Dep. at 10 (App. at 1, 4). | Undisputed. |
|---|---|---|
| 5. | Henry rates his English skills at 1-2 out of 10, while Annie rates hers as only slightly better. J. Zheng Dep. at 6-7; L. Li Dep. at 10 (App. at 1, 4). | Undisputed that Henry and Annie rated their English skills low, but disputed that such a rating is accurate. (Boldman Affidavit at ¶8, Sec. App'x 63; Gonzalez Depo. at 34:1-22, Sec. App'x 170.) |
| 6. | Henry and Annie operated two restaurants, King Buffet and Mongolian Buffet (the "Restaurants") and paid numerous employees good wages. *(See, e.g.,* App. at 125-1382). | Undisputed that Henry and Annie owned and operated the Restaurants during the relevant time period. Disputed that they paid "good wages." Defendants' reference to over twelve hundred pages of documents as "support" for this fact is inappropriate. Also, the term "good wages" is undefined and contrary to the evidence that Defendants violated the FLSA. |
| 7. | The Restaurants were family run and were staffed, in part, by Annie's and Henry's family, including their parents, siblings and other relatives. (App. at 119-120) | Undisputed that Annie and Henry employed numerous family members at both Restaurants. |
| 8. | For the time covered by the Department's investigation, Henry primarily was responsible for Mongolian Buffet and was in charge of hiring, firing and instructing employees. J. Zheng Dep. at 12 (App. at 2). | Undisputed that Henry was in charge of hiring, firing, and training new employees for Mongolian Buffet, but Annie also "helped [her] husband to manage." (Li Depo. 55:6-10, Sec. App'x 22.) |
| 9. | Annie was responsible for King Buffet, although she also worked several hours each week at Mongolian Buffet. L. Li Dep. at 33, 54 (App. at 5, 6). | Undisputed that Annie managed King Buffet, beginning in 2010, and also worked several hours at Mongolian Buffet, including helping her husband with management duties. (Li Depo. 32:5-33:9, 55:6-10, Sec. App'x 19, 22.) |
| 10. | The Department conducted wage and hour investigations at King Buffet four times while the individual Defendants operated it – in 2002, 2005, 2006 and 2014. (App. at 8-16) | Undisputed. |
| 11. | The 2002 investigation was initiated as part of a full service restaurant initiative and resulted in $509.24 of back wages as a result of improperly computing three employees' overtime. (App. at 17-22). | Undisputed that Wage and Hour's 2002 investigation of King Buffet was part of a Local Restaurant Initiative, and that Wage and Hour found King Buffet owed $509.24 in back wages. Disputed as to the number of employees for whom back wages were calculated, as it was two employees. (Narrative Report for 2002 Investigation, Sec. App'x 67-68, authenticated by Boldman Affidavit at ¶5, Sec. App'x 63.) Disputed that back wages were only a result of improper payment of overtime, as some of the back wages also were a result of failure to pay the minimum wage. (Id., Sec. App'x 67-68.) |

| | | |
|---|---|---|
| 12. | Because of Annie and Henry's limited English skills, during the closing conference after the 2002 investigation, the Department contacted Ms. Ying Sa, an Iowa accountant from China, to interpret. (App. at 15). | Undisputed that Ying Sa, a CPA, was present at the December 23, 2002 closing conference to assist with translation into Mandarin Chinese. Disputed as to which party requested Ms. Sa's presence. (Id., Sec. App'x 67.) |
| 13. | The 2005 investigation – a follow up on the 2002 investigation – resulted in $257.60 of back wages because the restaurant paid overtime based on a semi-monthly period rather than weekly. (App. at 17-22). | Undisputed that the 2005 investigation found the restaurant owed $257.60 in back wages. Disputed as to the reason for the back wages, as Wage and Hour found overtime for tipped employees was calculated improperly at $4.88 instead of $5.83; additionally, Wage and Hour found overtime was paid after 86.67 hours per semi-monthly pay period instead of after forty hours per week. (Narrative Report for 2005 Investigation, Sec. App'x 69-70, authenticated by Boldman Affidavit at ¶5, Sec. App'x 63.) |
| 14. | The 2006 investigation, which followed up the two prior investigations, found absolutely no violations. (App. at 28). | Undisputed that Wage and Hour found no violation based on the face of the records and an interview with Annie. |
| 15. | In March 2014, the Department initiated an investigation after receiving a complaint from two former Mongolian Buffet employees. (App. at 30). | Disputed as to the date Wage and Hour initiated its investigation, as the investigation actually commenced in February 2014, but undisputed that the investigation arose from the complaints of two former Mongolian Buffet employees. (Case Diary Entry, Sec. App'x 73, authenticated by Boldman Affidavit at ¶4, Sec. App'x 62.) |
| 16. | The Department conducted a cold call visit at Mongolian Buffet on March 6, 2014, and, at that time, interviewed multiple employees, Henry and Annie. (App. at 31). | Undisputed that Wage and Hour investigators showed up unannounced at Mongolian Buffet on March 6, 2014, and that the investigators interviewed six employees, in addition to Henry, at that time. Disputed that Wage and Hour interviewed Annie on March 6, 2014. (Li Ying Li Statement from March 18, 2014 ("Li Statement 3-18-14"), Sec. App'x 108, authenticated by Li Depo. at 71:15-22, Sec. App'x 24; and Li Ying Li Statement from March 19, 2014 ("Li Statement 3-19-14"), Sec. App'x 112, authenticated by Li Depo. at 76:14-17, Sec. App'x 25.) |

| 17. | Although the Department provided an interpreter to all interviewed employees and previously provided Henry and Annie an interpreter, it provided no interpreter to Henry or Annie this time. J. Zheng Dep. at 53; L. Li Dep. at 88 (App. at 3, 7). | Disputed, in that the documents cited do not support the proposition that Wage and Hour provide interpreters to all employees. Also, disputed that Wage and Hour provided an interpreter to all interviewed employees. (Employee Statement, Sec. App'x 147, authenticated by Boldman Affidavit at ¶9, Sec. App'x 64.) Further disputed that Wage and Hour provided interpreters for Henry when it interviewed him in 2002, nor did it provide interpreters to Annie when it interviewed her in 2005 and 2006. (Narrative Report for 2002 Investigation, Sec. App'x 67; Narrative Report for 2005 Investigation, Sec. App'x 70; and Narrative Report for 2006 Investigation, Sec. App'x 71-72, all authenticated by Boldman Affidavit at ¶5, Sec. App'x 63.) Undisputed that Wage and Hour did not provide interpreters when its investigators spoke with Henry on March 6, 2014, but he did not request an interpreter be provided or indicated he misunderstood the questions being asked. (Zheng Depo. at 53:1-54:17, Sec. App'x 8; and Boldman Affidavit at ¶7, Sec. App'x 63.) |
| --- | --- | --- |
| 18. | All Spanish speaking employees were given the opportunity to review statements in their native language. (App. at 39-73). | Undisputed. |
| 19. | All still available witnesses confirmed they would not be comfortable being interviewed or signing statements in English. E. Paredes Dep. at 26-27; G. Andrade Dep. at 26; L. Moreira Dep. at 35-36 (App. at 79-80, 85, 92). | Disputed as to the term "still available," but undisputed that the three Spanish-speaking former employees whom Defendants' deposed indicated they would not be comfortable being interviewed or signing statements in English. |
| 20. | After the initial Mongolian Buffet investigation, the Department expanded its investigation to include King Buffet and on March 19, 2014, investigators visited the King Buffet and interviewed employees. (App. at 8-16). | Undisputed. |

| | | |
|---|---|---|
| 21. | As at Mongolian Buffet, the Department offered interpretive services to employees at King Buffet, but not Annie, who is not proficient in spoken or written English. L. Li Dep. at 10 (App. at 4). | Disputed, in that the documents cited do not support the proposition that Wage and Hour provide interpreters to all employees. Also, disputed that Wage and Hour provided an interpreter to all interviewed employees. (Employee Statement, Sec. App'x 147.) Further disputed that Annie is not proficient in spoken or written English. (Boldman Affidavit at ¶8, Sec. App'x 63; Gonzalez Depo. at 34:4-8, Sec. App'x 170.) Undisputed that there was no interpreter used when Wage and Hour spoke with Annie on March 19, 2014, but she never indicated she misunderstood the questions being asked. (Li Depo. at 69:1-6, Sec. App'x 23; and Boldman Affidavit at ¶8, Sec. App'x 63.) |
| 22. | The Department accepted all statements from Latino employees, even when contradicted by other Latino employees, and rejected all Chinese witness's statements. (App. at 8-16, 30-38). | Disputed. By generally citing Wage and Hour's narrative reports, Defendants are not actually supporting this "fact"; rather, it is an unsubstantiated assumption. Wage and Hour reviewed all statements and made credibility determinations. (Boldman Affidavit at ¶14, Sec. App'x 65.) |
| 23. | The Spanish speaking employees worked full-time with regular schedule – 6 days a week with the same day off each week. Dep. at 12 (App. at 82). | Undisputed. |
| 24. | Employees slept during the work day. (App. at 101-104). | Disputed, in that all three of the employees whom Defendants deposed testified that they did not sleep while at work, nor did they observe their coworkers sleeping. (Gloria Andrade Deposition ("Andrade Depo.") at 22:17-18, 22:25-23:2, Sec. App'x 87; Luis Moreira Deposition ("Moreira Depo.") at 27:18-28:5, 28:18-29:1, Sec. App'x 77; and Deposition of Emanuel Paredes ("Paredes Depo.") at 21:12-22, Sec. App'x 100.) Moreover, the photographs Defendants attempt to use to support their claim are completely unauthenticated, and therefore cannot be relied upon.[1] |

---

[1] See Roberts v. USCC Payroll Corp., 635 F. Supp. 2d 948, 968 n.9 (N.D. Iowa 2009) ("Plaintiffs have again failed to provide the court with any information about when these photographs were taken, who took them, and under what circumstances. . . . Thus, these photographs do not constitute admissible evidence which the court can consider in ruling on defendants' motion.").

| | | |
|---|---|---|
| 25. | The Department asserts all employees worked straight through from open to close for 12 hours each day. (App. at 8-16, 30-38). | Undisputed that, because of inaccurate time keeping and based on the totality of the evidence obtained during the investigation, Wage and Hour was forced to estimate the hours worked by employees, and therefore calculated back wages at twelve hours per day, six days per week. |
| 26. | Time sheets for Spanish speaking employees at Mongolian Buffet reflect they were paid for their recorded time via check (with the remainder paid in cash). (App. at 912-936, 940-992, 1086-1096, 1102-1125, 1194-1212, 1215-1360, 1365-1382). | Disputed that the timesheets of Spanish-speaking employees were in any way accurate, or that employees received "the remainder" in cash. (Moreira Depo. at 42:24-44:8, Sec. App'x 80; Paredes Depo. at 32:16-33:5, Sec. App'x 103; and Andrade Depo. at 31:13-33:1, Sec. App'x 89 (disputing the accuracy of their timesheets); Moreira Depo. at 41:17-42:14, Sec. App'x 79-80 (explaining money was taken from his cash payment to cover his wife's check); and Andrade Depo. at 28:16-29:17, Sec. App'x 88 (explaining money to cover her check was taken from her husband's cash payment).) |
| 27. | Time sheets for Spanish speaking employees at King Buffet reflect their daily work hours. (App. at 735-749, 754-794, 796-811). | Disputed, as the timesheets for King Buffet Spanish-speaking employees do not reflect the hours worked. The timesheets show extensive break periods, while employees stated they did not take such breaks. (Jorge Paredes Statement ("J. Paredes Statement"), Sec. App'x 153; and Miguel Rosalino Ortiz Statement ("Ortiz Statement"), Sec. App'x 158, all authenticated by Boldman Affidavit at ¶9, Sec. App'x 64.) Additionally, the timesheets uniformly start each day at 10:30 a.m. and end at 10:30 p.m., while two King Buffet employees stated they began working at 10:15 a.m. and a third stated he began working at 10:00 a.m. and ended at 11:00 p.m. (J. Paredes Statement, Sec. App'x 158; Benito Mendez Statement ("Mendez Statement"), Sec. App'x 149, authenticated by Boldman Affidavit at ¶9, Sec. App'x 24; and Ortiz Statement, Sec. App'x 158.) |

| # | | |
|---|---|---|
| 28. | Spanish speaking employees at both Restaurants signed a statement each pay period acknowledging hours worked in the pay period, their hourly rate and their total pay. (App. at 750-753, 795, 812-815, 937-939, 1097-1101, 1213-1214, 1361-1364). | Disputed, in that the "cash records" Defendants produce to support this fact do not uniformly show employees' hours worked or hourly rate. (Benito Mendez Cash Record ("Mendez Cash Record"), Sec. App'x 185; Jorge Paredes Cash Record ("J. Paredes Cash Record"), Sec. App'x 203; and Miguel Rosalino Ortiz Cash Record ("Ortiz Cash Record"), Sec. App'x 211, all authenticated by Boldman Affidavit at ¶11, Sec. App'x 64.)  Further disputed that, in signing the statement, employees were "acknowledging" anything, as employees testified these documents were given to them to sign without explanation or a chance to review.  (Moreira Depo. at 42:24-44:8, Sec. App'x 80; Paredes Depo. at 32:16-33:5, Sec. App'x 103; and Andrade Depo. at 31:13-33:1, Sec. App'x 89.) |
| 29. | Only one Spanish speaking employee, Gloria Andrade, worked outside the kitchen and was not at least partially compensated in cash. (App. at 55-28). | Undisputed that Ms. Andrade was the only Spanish speaking employee to work as a server, but disputed that Ms. Andrade did not receive cash compensation, as she was compensated in tips only.  (Andrade Depo. at 8:16-18, Sec. App'x 84.) |
| 30. | Andrade claims a wholly unique pay structure not claimed by anyone else whereby she somehow was paid out of her husband's wages. (App. at 55-58). | Undisputed that Ms. Andrade received a paycheck each pay period, but the amount of money to cover the check was taken out of the cash her husband, Luis Moreira, was owed. (Andrade Depo. at 28:16-29:17, 41:17-42:14, Sec. App'x 88.) |
| 31. | Emanuel Paredes testified Andrade was part-time and worked only the lunch or dinner shifts. E. Paredes Dep. at 9 (App. at 75). | Undisputed that Emanuel Paredes testified that Ms. Andrade was the only employee, including Chinese employees, who worked a half shift. (Paredes Depo. at 17:22-18:6, Sec. App'x 99-100.) |
| 32. | Andrade's time sheets are consistent with Paredes' testimony, were signed by Andrade and correspond with her paychecks.  Andrade Dep. at 31-32 (App. at 85A-86, 1365). | Undisputed that Ms. Andrade's time sheets suggest she was a part-time employee and correspond with her paychecks.  Undisputed that Ms. Andrade's signature is on the timesheets, but disputed that she knew the significance of the document. (Andrade Depo. at 31:13-33:1, Sec. App'x 89.) |

| | | |
|---|---|---|
| 33. | The Department discounts Paredes' testimony as to Andrade because she worked as a server and he worked in the back. Gonzalez Dep. at _ (App. at    ). | Disputed, as Defendants fail to properly support this fact with a reference to the record. Moreover, Mr. Paredes himself said he could only see Ms. Andrade "sometimes" because "I was working in the back and she was in the front." (Paredes Depo. at 10:1-6, Sec. App'x 98.) |
| 34. | Non-Spanish speaking employees, including Chinese employees were paid differently and subject to different pay practices than the Spanish speaking employees. *See generally timesheets* and paystubs (App. at 125-1382). | Disputed that non-Spanish speaking employees were paid differently and subject to different pay practices than Spanish speaking employees. As a threshold matter, Defendants' reference to over twelve hundred pages of documents as "support" for this fact is inappropriate. Moreover, there were in fact non-Spanish speaking employees subject to similar practices (i.e., being paid for a small amount of hours by check while receiving a larger sum in cash). (Records of Bi Jiang Zheng, Sec. App'x 697-708, authenticated by Boldman Affidavit at ¶11, Sec. App'x 64.) |
| 35. | All non-Spanish speaking employees received all wages on a paycheck and tipped employees received tips at each shift's end. (App. at 145-179, 195-220, 238-269, 286-313, 329- 356, 372-399, 415-442, 458-485, 488, 495-506, 509, 517-531, 559-601, 605-606, 627-655, 675- 707, 711-734, 817-818, 831-867, 872-879, 887-900, 906-911,  1426-1586). | Disputed that all non-Spanish speaking employees received all wages by either paycheck or from tips received at the end of each shift. Defendants' own records show non-Spanish speaking employees did not receive all wages on paychecks, as several received both a paycheck and a cash payment for the supposed amount of the paycheck. (Employee Cash Records and Paystubs, Sec. App'x 709-823, authenticated by Boldman Affidavit at ¶11, Sec. App'x 64.) Moreover, several non-Spanish-speaking employees questioned by Wage and Hour investigators made statements suggesting they did not receive checks and/or did not retain all tips. (Employee Statements, Sec. App'x 140, authenticated by Boldman Affidavit at ¶9, Sec. App'x 64.) Overall, disputed employee timesheets were accurate. (Gonzalez Depo. at 54:6-17, 63:9-11, 70:19-71:5, Sec. App'x 171-173.) |

| | | |
|---|---|---|
| 36. | These employees recorded their time daily on time sheets signed and verified each month. (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586). | Disputed that non-Spanish-speaking employees recorded their time daily, as several non-Spanish-speaking employees told the Wage and Hour investigators they did not record their time. (Employee Statement, Sec. App'x 125, 140, authenticated by Boldman Affidavit at ¶9, Sec. App'x 64.) Overall, disputed employee timesheets were accurate. (Gonzalez Depo. at 54:6-17, 63:9-11, 70:19-71:5, Sec. App'x 171-173.) |
| 37. | They were paid consistent with their recorded and verified hours. *(Compare* App. at 145-179, 195-220, 238-269, 286-313, 329-356, 372-399, 415-442, 458-485, 488, 495-506, 509, 517-531, 559-601, 605-606, 627-655, 675-707, 711-734, 817-818, 831-867, 872-879, 887- 900, 906-911, 1426-1586 *with* App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586). | Disputed that non-Spanish-speaking employees all recorded their time. (Employee Statement, Sec. App'x 125, 140.) Also disputed employees were paid consistent with their timesheets, as several non-Spanish-speaking employees received both a paycheck and a cash payment for the supposed amount of the paycheck. (Employee Cash Records and Paystubs, Sec. App'x 709-823.) Overall, disputed employee timesheets were accurate. (Gonzalez Depo. at 54:6-17, 63:9-11, 70:19-71:5, Sec. App'x 171-173.) |
| 38. | Employees confirm they recorded their time and were paid for hours worked. (App. at 105-113, 1383-1392). | Disputed that non-Spanish-speaking employees recorded their time daily, as several non-Spanish-speaking employees told the Wage and Hour investigators they did not record their time. (Employee Statement, Sec. App'x 125, 140.) Overall, disputed employee timesheets were accurate. (Gonzalez Depo. at 54:6-17, 63:9-11, 70:19-71:5, Sec. App'x 171-173.) |
| 39. | Non Spanish speaking employees confirm they worked varying schedules – not six days a week, twelve hours a day. (Id.). | Disputed as to the accuracy of employee statements. (Boldman Affidavit at ¶14, Sec. App'x 65.) |
| 40. | Although Caucasian employees were paid in the same manner as Chinese employees and likewise indicated they worked part-time (see App. at 112), the Department accepted the Caucasian employees' status as part-time employees while rejecting similar statements by Chinese employees. | Disputed. The Secretary has no knowledge as to the races of the various employees, other than knowing the language spoken by the employees whom his investigators interviewed, and Defendants do not present any evidence as to alleged "Caucasian" employees' actual race. |

| | | |
|---|---|---|
| 41. | The Department did not include any of the five Caucasian employees on the list of back wages for either restaurant. *(Compare* App. at 93-100 *with* 1426-1586). | Disputed. The Secretary has no knowledge as to the races of the various employees, other than knowing the language spoken by the employees whom his investigators interviewed, and Defendants do not present any evidence as to alleged "Caucasian" employees' actual race. As to the five employees whose payroll records Defendants produced at 1426 to 1586, it is undisputed Wage and Hour did not calculate back wages for them. |
| 42. | The Department did not interview at least four of the five Caucasian employees to ask whether their pay accurately reflected hours worked. *(See* App. at 51-54). | Disputed. The Secretary has no knowledge as to the races of the various employees, other than knowing the language spoken by the employees whom his investigators interviewed, and Defendants do not present any evidence as to alleged "Caucasian" employees' actual race. Moreover, the appendix pages cited by Defendants to support this fact do not actually do so, as the cite is to the statement of Gustavo Alvarez. |
| 43. | The Department only addresses two groups – the Spanish speaking and Chinese employees – and assumes that, unlike the Caucasian employees, Asian employees who confirm they worked part-time are lying. *(See* App. at 8-16, 30-38). | Disputed. The Secretary has no knowledge as to the races of the various employees, other than knowing the language spoken by the employees whom his investigators interviewed, and Defendants do not present any evidence as to alleged "Caucasian" employees' actual race. Moreover, by generally citing Wage and Hour's narrative reports, Defendants are not actually support this "fact"; rather, it is an unsubstantiated assumption. |
| 44. | Investigator Gonzalez concluded time records for Chinese and Spanish speaking employees were not accurate and should be disregarded. *(See* App. at 8-16, 30-38). | Undisputed that Wage and Hour viewed Mongolian Buffet and King Buffet's time records to be inaccurate. (Gonzalez Depo. at 54:6-17, 63:9-11, 70:19-71:5, Sec. App'x 171-173.) Disputed that Wage and Hour found only Chinese-speaking or Spanish-speaking employees' timesheets to be inaccurate. (Employee Statement, Sec. App'x 147.) |

| | | |
|---|---|---|
| 45. | Investigator Gonzales reached this conclusion despite many employees the Department interviewed confirming they recorded their time when they worked. (App. at 105-113). | Disputed, in that the documents cited by Defendants do not actually support the fact for which they are cited: of the seven employee statement provided, only two employees stated they record their time (107-108 and 112), one employee stated she recorded her arrival time only (111), three employees did not even address whether they wrote down their time (105-106 and 109-110), and one employee specifically stated she did not record her time (113). Moreover, there were other employees who also did not record their time. (Employee Statement, Sec. App'x 125, 140.) |
| 46. | The time sheets the Department reviewed were signed by the employees. *(See* App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586). | Undisputed that most of the timesheets given to Wage and Hour had a signature, although Defendants have not presented any evidence that the signatures are those of the employees for which they purport to be. Additionally, disputed employees were acknowledging anything by signing the timesheets, as employees testified these documents were given to them to sign without explanation or a chance to review. (Moreira Depo. at 42:24-44:8, Sec. App'x 80; Paredes Depo. at 32:16-33:5, Sec. App'x 103; and Andrade Depo. at 31:13-33:1, Sec. App'x 89.) |
| 47. | Although no reasoning is provided in her report, Investigator Gonzalez apparently accepted that Caucasian employees accurately recorded their time, finding they were not owed back wages. *(See* App. at 93-100). | Disputed. The Secretary has no knowledge as to the races of the various employees, other than knowing the language spoken by the employees whom his investigators interviewed, and Defendants do not present any evidence as to alleged "Caucasian" employees' actual race. Moreover, the documents cited by Defendants do not actually support the fact for which they are cited: the Summary of Unpaid Wages only show which employees were included, not which employees were excluded. |

| 48. | Investigator Gonzalez concluded all Chinese and Spanish speaking employees – regardless of their job's nature, regardless of their part-time status, and including those who confirmed under oath they did not work 6 days a week, 12 hours a day – worked 6 days a week, 12 hours a day. (App. at 8-16, 30-38) | Undisputed that Wage and Hour calculated back wages for all employees as having worked seventy-two hours per week based on all the evidence gathered, including the records originally supplied and the alternate records, employee statements, and the observations of its investigators. (Gonzalez Depo. at 54:6-17, Sec. App'x 171.) Disputed the statements "confirmed under oath" were available to Wage and Hour during its investigation. (Letter from Defendants' Counsel, Sec. App'x 836; Carla Reynolds Declaration ("Reynolds Declaration") at ¶3, Sec. App'x 837.) |
| --- | --- | --- |
| 49. | Investigator Gonzalez disregarded employees' signed verification of hours worked, their statements to the Department, and their signed declarations. (App. at 8-16, 30-38). | Disputed. By generally citing Wage and Hour's narrative reports, Defendants are not supporting this "fact"; rather, it is an unsubstantiated assumption. Moreover, Investigator Gonzalez could not have considered any "signed declarations," as these documents were not signed until February 2016 at the earliest, and were not produced to the Secretary's counsel until June 2016, well after Investigator Gonzalez concluded her investigation. (Letter from Defendants' Counsel, Sec. App'x 836; Reynolds Declaration at ¶3, Sec. App'x 837.) Instead, Wage and Hour relied on all evidence gathered, including the records originally supplied and the alternate records, employee statements, and the observations of its investigators. (Gonzalez Depo. at 54:6-17, Sec. App'x 171.) |
| 50. | With respect to King Buffet, Investigator Gonzalez also concluded, "Based on the information gathered through the interviews of the Spanish speaking employees, it was determined that the Chinese employees were receiving check and cash payments for their hours worked." (App. at 8-16, 30-38). | Undisputed the sentence "Based on the information gathered through the interviews of the Spanish speaking employees, it was determined that the Chinese employees were receiving check and cash payments for their hours worked" is included in the narrative report written by Investigator Gonzalez. |
| 51. | Investigator Gonzalez reached this conclusion despite all Chinese employees who had worked a full pay period telling her they received pay by check. (App. at 105-113) | Disputed that all Chinese-speaking employees who had worked a full pay period told Wage and Hour they received their pay by check, as even one of the statements cited by Defendants, 109, states: "I don't received anything else if I don't receive tips." Moreover, several non-Spanish-speaking employees received both a paycheck and a cash payment. (Employee Cash Records and Paystubs, Sec. App'x 709-823.) |

| | | |
|---|---|---|
| 52. | Investigator Gonzalez reached this conclusion despite the fact that Spanish speaking employees actually did not tell her this was how Chinese employees were paid. (App. at 39-73). | Disputed that Spanish-speaking employees did not tell Wage and Hour that Chinese-speaking employees received cash, as Ms. Andrade said all servers work for only tips, and Mr. Moreira said Chinese employees were paid in cash. (Gloria Andrade Statement ("Andrade Statement"), Sec. App'x 111-118, authenticated by Boldman Affidavit at ¶9, Sec. App'x 64; Andrade Depo. at 30:6-22, Sec. App'x 89; Moreira Depo. at 32:13-33:22, Sec. App'x 78; Employee Information Form for Luis Moreira, App'x 93, authenticated by Moreira Depo. at 30:15-31:14, Sec. App'x 78.) |
| 53. | Investigator Gonzalez concluded that at least Spanish-speaking kitchen workers were paid a salary and, therefore, were owed the overtime premium for all hours over 40 in any workweek. (App. at 8-16, 30-38, 1393-1424). | Undisputed Spanish-speaking kitchen employees were paid a salary, but disputed that only Spanish-speaking employees were subject to this practice. (Records of Bi Jiang Zheng, Sec. App'x 697-708.) |
| 54. | With respect to servers, Investigator Gonzalez concluded that "due to the discrepancies in the records and statements provided," the tip credit would only be provide for the "hours shown on the payroll" and calculated back wages due without allocating the tip credit across all hours claimed by the Department. (App. at 8-16, 30-38, 1393-1424). | Undisputed Wage and Hour only calculated a tip credit for servers for the hours shown on their timesheets. |
| 55. | Numerous witnesses attest they did not work 12 hours a day, 6 days a week. (App. at 105-113, 1383-1392). | Disputed, as the declarations Defendants use to support this fact were not received by the Secretary until June 13, 2016, and, therefore, should not be admissible. (Letter from Defendants' Counsel, Sec. App'x 836; Reynolds Declaration at ¶3, Sec. App'x 837; Defendants' Declarations; Sec. App'x 850-859.) Also disputed as to the veracity of several statements taken during the investigation. (Boldman Affidavit at ¶ 14, Sec. App'x 65.) |
| 56. | Numerous employees confirm they worked part time. (App. at 105-113, 1383-1392). | Disputed, as the declarations Defendants use to support this fact were not received by the Secretary until June 13, 2016, and, therefore, should not be admissible. (Letter from Defendants' Counsel, Sec. App'x 836; Reynolds Declaration at ¶3, Sec. App'x 837; Defendants' Declarations; Sec. App'x 850-859.) Also disputed as to the veracity of several statements taken during the investigation. (Boldman Affidavit at ¶ 14, Sec. App'x 65.) |

| # | | |
|---|---|---|
| 57. | Not a single Chinese Employee disputes the accuracy of his or her time sheets. (App. at 105-113, 1383-1392). | Disputed, as the declarations Defendants use to support this fact were not received by the Secretary until June 13, 2016, and, therefore, should not be admissible. (Letter from Defendants' Counsel, Sec. App'x 836; Reynolds Declaration at ¶3, Sec. App'x 837; Defendants' Declarations; Sec. App'x 850-859.) Also disputed as to the veracity of several statements taken during the investigation. (Boldman Affidavit at ¶ 14, Sec. App'x 65.) |
| 58. | The Restaurants submitted detailed records showing the time actually worked by non-Spanish speaking employees. (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357- 371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656- 672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586). | Disputed that the timesheets produced by Defendants' were accurate. (Gonzalez Depo. at 56:3-12, 63:9-11, 70:19-71:5, Sec. App'x 171-173.) |
| 59. | These employer's records reflect Chinese employee's daily time worked. (App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489- 494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868- 871, 880-886, 901-904, 1426-1586). | Disputed that the timesheets produced by Defendants accurately reflect the daily time worked by Chinese-speaking employees. (Gonzalez Depo. at 56:3-12, 63:9-11, 70:19-71:5, Sec. App'x 171-173.) |
| 60. | The Chinese employees were paid for this time. (App. at 145-179, 195-220, 238- 269, 286-313, 329-356, 372-399, 415-442, 458-485, 488, 495-506, 509, 517-531, 559-601, 605-606, 627-655, 675-707, 711-734, 817-818, 831-867, 872-879, 887-900, 906-911, 1426-1586). | Disputed that Chinese-speaking employees were paid for all time that was recorded on their timesheets, as one Chinese-speaking employee stated she was paid in tips only. (Employee Statement, Sec. App'x 161.) |
| 61. | The Department relies exclusively on evidence gathered from Spanish speaking employees – without any evidence they even could communicate with the Chinese employees or knew their names. (See App. at 8-16, 30-38). | Disputed that Wage and Hour relied only on the statements of Spanish-speaking employees, as it relied on records originally supplied and the alternate records, employee statements (of both Chinese-speaking and Spanish-speaking employees), and the observations of its investigators. (Gonzalez Depo. at 54:6-17, Sec. App'x 171.) |
| 62. | The Department admits kitchen workers are unreliable as to hours worked by servers. Gonzalez Dep. at _ (App. at      ). | Disputed, as Defendants fail to properly support this fact with a reference to the record. |

| | | |
|---|---|---|
| 63. | The Spanish speaking employees who could be located for depositions could not identify a single Chinese employee by name except owner Henry. E. Paredes Dep. at 12-15; G. Andrade Dep. at 13-18; L. Moreira Dep. at 14-21 (App. at 76-77, 82-84, 89-90). | Disputed, in that two of the employees whom Defendants deposed stated they knew of Chinese-speaking employees by nicknames, which was how they commonly referred to each other: Ms. Andrade listed nine Chinese-speaking employees by their nicknames, including both kitchen workers and servers. (Andrade Depo. at 13:3-19, Sec. App'x 85.) Mr. Moreira also explained employees knew Chinese-speaking employees by nickname and identified a kitchen worker and a server by such names. (Moreira Depo. at 14:25-15:11, 20:1-7, 34:16-22, 36:25-37:12, Sec. App'x 76, 78.) Indeed, even Zheng and Li were known by their nicknames, Henry and Annie. (Defendant Jian Yun Zheng's Answers to Plaintiff First Interrogatories at No. 12, Sec. App'x 37; and Defendant Liying Li's Answers to Plaintiff First Interrogatories at No. 12, Sec. App'x 46.) |
| 64. | The Spanish speaking employees who could be located for depositions could not say exactly what hours or days Chinese employees worked. E. Paredes Dep. at 12-15; G. Andrade Dep. at 13-18; L. Moreira Dep. at 14-21 (App. at 76-77, 82-84, 89-90). | Disputed that the Spanish-speaking employees did not know the hours worked by Chinese-speaking employees, as Ms. Andrade testified all employees worked the same hours. (Andrade Depo. at 11:25-12:7, Sec. App'x 85.) |
| 65. | With the exception of Andrade, who other Department witnesses confirm was part-time, all Spanish speaking employees worked in the kitchen. (App. at 39-54, 59-73). | Undisputed Ms. Andrade was the only Spanish-speaking employee who worked outside of the kitchen, but disputed she worked part-time (Andrade Depo. at 11:25-12:7, Sec. App'x 85.) |
| 66. | The Chinese employees worked a variety of positions, including as servers in the front of the Restaurants. (App. at 105-113). | Undisputed Chinese-speaking employees worked both in the "front of the house" as servers and hostesses, as well as in the "back of the house" in the kitchen. |
| 67. | The Spanish speaking employees never discussed wages or working hours with the Chinese employees. E. Paredes Dep. at 12-15; G. Andrade Dep. at 13-18; L. Moreira Dep. at 14-21 (App. at 76-77, 82-84, 89-90). | Disputed, as Ms. Andrade was told by servers speaking in English that they only received tips. (Andrade Depo. at 30:7-22, Sec. App'x 89.) |

| | | |
|---|---|---|
| 68. | Five to seven employees worked at King Buffet on a regular basis. (App. at 28, 39-43, 105-113, 1425, 1587-1588). | Disputed, in that the documents cited by Defendants do not actually support the fact for which they are cited. None of the employee statements (39-43 and 105-113) actual identify the full number of employees who worked at King Buffet, nor does Wage and Hour's narrative from its 2006 investigation (28). As for the other documents cited: page 1425 is a page of handwritten notes that Defendants have failed authenticate, and even if it was authenticated, it only states that there were three servers present on March 19, 2014 at 11:00 a.m. Finally, pages 1587-1588 are a list of employees whom Wage and Hour interviewed, which has no bearing on how many employees actually worked at King Buffet. |
| 69. | Investigator Gonzalez disregarded time records and employee statements to conclude that all eleven employees worked 12 hours a day, 6 days a week. (App. at 8-16). | Disputed, in that the documents cited by Defendants do not actually support the fact for which they are cited. Defendants cite generally to Wage and Hour's narrative report, although the report does not actually estimate the number of employees who worked at King Buffet. Indeed, the Secretary genuinely does not know where the idea of "eleven employees" came from. Moreover, Wage and Hour relied on records originally supplied and the alternate records, employee statements, and the observations of its investigators. (Gonzalez Depo. at 54:6-17, Sec. App'x 171.) |
| 70. | Investigator Gonzalez admits she never found enough employees at the Restaurants to support her conclusion in that so many hours were worked. Gonzalez Dep. at __ (App. at __). | Disputed, as Defendants fail to properly support this fact with a reference to the record, without a cite to the record, it is unclear exactly what Defendants are trying to say. |
| 71. | All Chinese employees received paychecks that correspond with their time sheets. Compare App. at 125-144, 180-194, 221-237, 271-285, 314-328, 357-371, 400-414, 443-457, 486-487, 489-494, 507-508, 510-516, 532-558, 602-603, 609-624, 656-672, 708-709, 735-749, 816, 827, 868-871, 880-886, 901-904, 1426-1586 with App. at 145-179, 195-220, 238-269, 286- 313, 329-356, 372-399, 415-442, 458-485, 488, 495-506, 509, 517-531, 559-601, 605-606, 627- 655, 675-707, 711-734, 817-818, 831-867, 872-879, 887-900, 906-911, 1426-1586). | Disputed, as at least one Chinese-speaking employee was paid for a small amount of hours by check while receiving a larger sum in cash. (Records of Bi Jiang Zheng, Sec. App'x 697-708.) |

| 72. | Chinese employees interviewed by the Department and those who provided statements attest they were paid by check and in tips. (App. at 105-113). | Disputed that all Chinese speaking employees received all wages by either paycheck or from tips. Defendants' own records show Chinese speaking employees did not receive all wages on paychecks, as several received both a paycheck and a cash payment. (Employee Cash Records and Paystubs, Sec. App'x 709-823.) Moreover, several non-Spanish-speaking employees questioned by Wage and Hour investigators made statements suggesting they did not receive checks and/or did not retain all tips. (Employee Statements, Sec. App'x 161.) |
|---|---|---|
| 73. | Mr. Mendez-Cid and Mr. Rosalina Ortiz said nothing about how the Chinese employees were paid. (App. at 39-42, 47-50). | Undisputed that, when interviewed, Mr. Mendez and Mr. Ortiz did not mention how Chinese employees were paid, but they did say all employees worked the same hours (twelve hour shifts, six days per week). (Ortiz Statement, Sec. App'x 158; and Mendez Statement, Sec. App'x 149.) |
| 74. | Paredes expressly said "I do not know how the servers are paid." (App. at 43-46). | Undisputed.[2] |
| 75. | Even the Spanish speaking employee relied on by the Department confirms she retained her tips and they are reflected on her paystubs. (App. at 55-58). | Disputed that Ms. Andrade retained all her tips: in her statement (to which Defendants cite), she specifically stated that on Wednesdays, tips were pooled and shared with an employee who ran food from the kitchen to the buffet. (Andrade Statement, Sec. App'x 117.) This was confirmed by Ms. Andrade's deposition testimony. (Andrade Depo. at 24:19-25:15, Sec. App'x 87.) |

---

[2] It should be noted that Jorge Paredes, the individual who gave the statement to which Defendants refer, is different than Emanuel Paredes, the individual whom Defendants deposed.