IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| EDWARD HUGLER, Acting Secretary of Labor, Department of Labor | * * * | |
| Plaintiff, | * * | |
| v. | * * | 4:15-cv-00136 |
| LI YING LI; JIAN YUN ZHENG; KING BUFFET OF IA, INC., d/b/a KING BUFFET; KING BUFFET OF AMES, INC.; BUFFET MONGOLIAN GRILL, INC., d/b/a MONGOLIAN BUFFET; and STEAK BUFFET, INC., | * * * * * * * | ORDER |
| Defendants. | * * | |

Before the Court is a Motion for Partial Summary Judgment filed on June 24, 2016, by Defendants Li Ying Li, Jian Yun Zheng, King Buffet of IA, Inc., King Buffet of Ames, Inc., Buffet Mongolian Grill, Inc., and Steak Buffet, Inc. (collectively "Defendants"). Clerk's No. 33. The Secretary of the United States Department of Labor ("DOL"), the Plaintiff in this action, filed a resistance on July 25, 2016. Clerk's No. 41. Defendants filed a reply on August 11, 2016. Clerk's Nos. 44, 45. The matter is fully submitted.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendants Li Ying Li and Jian Yun Zheng owned and operated two restaurants in Ames, Iowa: Mongolian Buffet and King Buffet.[1] Clerk's No. 41-1 at 1. In February 2014, two former employees of Mongolian Buffet, Luis Moreira and Gloria Andrade, made a formal complaint

---

[1] All defendants in this action other than Li and Zheng are different iterations of the two legal business entities referred to throughout this order as "Mongolian Buffet" and "King Buffet." *See* Clerk's No. 41-2 at 1–2.

with the Wage and Hour Division ("WHD") of the DOL regarding Defendants' pay practices. Clerk's No. 41-2 at 4. Moreira and Andrade claimed that they worked up to 72 hours per week without overtime pay and that they witnessed other payment irregularities, including stripping wait staff of their tips to pay kitchen workers in cash. Clerk's No. 41-3 at 92–95. Moreira and Andrade later signed written statements describing their experiences working at Mongolian Buffet. *Id.* at 117–20, 126–29. Andrade stated,

> I started at 10:30 am and finished at 10:30 pm. I worked 6 days per week. My day off was Mondays. I did work overtime. It was not paid. . . . We did not leave the restaurant for break[,] did not clock in or out. All the kitchen employees and the servers work the same hours and same number of days.

*Id.* at 117. Moreira stated,

> I worked 12 hours per day from 10:30 am until 10:30 pm without taking a break. . . . All the employees work the same schedule. They are afraid to speak to people about their rights. There were 4 Chinese employees in the kitchen when I worked there. . . . The owner[] supplies an apartment to the Chinese employees. . . . The owner brings the Chinese employees to work by van everyday. They arrive at 10:30 am. He also takes them home. They do not do anything else except go to and from work.

*Id.* at 126–27.

Following Moreira's and Andrade's complaints, WHD initiated formal investigations into the operations of both Mongolian Buffet and King Buffet. The methods and findings of those investigations are recounted in WHD investigator Maria Gonzalez's narrative reports. *See generally* Clerk's Nos. 33-5, 33-10.

According to the reports, on March 6, 2014, four WHD investigators made an unannounced investigatory visit to Mongolian Buffet. Clerk's No. 41-2 at 5. The investigators arrived before the restaurant opened, and they observed a white van enter the parking lot of the restaurant at approximately 10:20 a.m. Clerk's No. 41-3 at 96. The investigators then observed six "Asian workers" exit the van and enter the restaurant. *Id.* According to the report, several

2

"Chinese workers" evaded WHD investigators throughout the day by leaving the restaurant through the back door any time the investigators entered the restaurant through the front door. Clerk's No. 33-10 at 31.  Though some employees evaded them, the investigators were able to interview Defendant Zheng, some Spanish-speaking employees, and a few Chinese-speaking employees.  *See id.*; *see also* Clerk's No. 41-3 at 8, 113–16, 121–25, 130–38, 140.  Defendant Li also provided a statement on March 18, 2014, when she visited WHD's office to deliver a box of the restaurants' paper records.  *See* Clerk's No. 41-3 at 107–10.

On March 19, 2014, the four WHD investigators made an unannounced investigatory visit to King Buffet.  Clerk's No. 33-5 at 9.  The investigators again took statements from several employees.  *See* Clerk's No. 41-3 at 145–62.  One King Buffet employee reported, "The owner told me that you were coming here, and that I should not talk to you." *Id.* at 158.  Another refused to speak with the investigators.  *See id.* at 145.

In their statements, several Spanish-speaking employees from both restaurants asserted that they worked for eleven or twelve hours a day, six days each week.  *Id.* at 113, 121, 131, 149, 153, 158.  Those employees also stated that all the Spanish-speaking and Chinese-speaking employees worked those same hours.  *Id.*  However, the Chinese-speaking employees from both restaurants stated that they worked between thirteen and thirty-five hours per week.  *See id.* at 125, 130, 140, 146, 147.  All the employee statements obtained by WHD reflected widely varying answers to questions regarding the recording of their hours worked and the manner in which they were paid.  *See id.* at 113, 121, 125, 130–31, 134, 139, 146, 153.

Following the investigative visits to the two restaurants and a review of the payroll records provided by Defendant Li, WHD concluded that violations of minimum wage, overtime, and record-keeping requirements had occurred and were ongoing at both restaurants.  Clerk's

Nos. 33-5 at 10–11, 33-10 at 32–33; *see* 29 U.S.C. §§ 206–07, 211. The investigators found, "The time records did not reflect the true number of hours worked, and the payroll records did not reflect the true wages earned. . . . [A]ll employees were working as many as 72 hours per week." Clerk's No. 33-10 at 32. The WHD investigators disclosed their findings to Defendants at a conference on May 13, 2014. Clerk's Nos. 33-10 at 34, 41-3 at 163–65. Defendants denied the violations. Clerk's No. 41-3 at 165. Numerous additional conferences took place throughout 2014. *See* Clerk's No. 33-10 at 35–37. WHD continued its investigation and attempted to work with Defendants to bring their operations into compliance. *Id.* However, as of December 2014, WHD reported receiving statements from employees that the violations remained ongoing. Clerk's Nos. 33-10 at 38, 41-3 at 134.

On April 28, 2015, Plaintiff initiated this action, seeking an injunction prohibiting Defendants from continuing to violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, recovery of unpaid wages, and liquidated damages. Clerk's No. 1 at 5; *see* 29 U.S.C. §§ 215(a)(2) & (5), 216(c). The Complaint identified thirty-eight employees[2] to whom amounts are owing as a result of violations of FLSA minimum wage, overtime, and record-keeping requirements. Clerk's No. 1 at 5, 7. Defendants filed their Answer on June 29, 2014. Clerk's No. 10. On August 28, 2015, this Court issued an order adopting the parties' proposed discovery deadline of April 8, 2016. *See* Clerk's Nos. 14, 17. On January 28, 2016, the Court extended the discovery deadline to June 8, 2016. Clerk's No. 27.

---

[2] The Complaint also alleged additional amounts may be owed for "employees who are presently unknown to Plaintiff" as a result of Defendants' alleged ongoing violations. Clerk's No. 1 at 5.

On June 8, 2016, the final day of discovery, Defendants sent Plaintiff ten declarations signed by several employees identified in the Complaint.[3] Clerk's Nos. 33-115 through 33-124, 41-7 at 836. Each declaration stated that the declarant was fully paid for all hours work, and all of them contained identical language stating, "I do not wish to sue my former employers. I do not believe I am owed wages and have no desire for the Department of Labor to sue on my behalf." Clerk's Nos. 33-115 through 33-124.

On June 24, 2016, Defendants filed the present motion for partial summary judgment. Clerk's No. 33.

## II. SCOPE OF MOTION

Defendants seek partial summary judgment on three grounds. Their first claim is that Plaintiff cannot assert FLSA violations pertaining to a certain subset of the restaurants' employees. Clerk's No. 39 at 12. Of the thirty-eight employees identified in the Complaint, *see* Clerk's No. 1 at 7, Defendants assert that there is a "complete lack of evidence" of any FLSA violations as to twenty-four of them. Clerk's No. 44-1 at 24.[4] The motion does *not* seek summary judgment as to allegations of FLSA violations pertaining to the other fourteen employees listed. *See* Clerk's No. 1 at 7.

---

[3] Though production of the documents occurred on the final day of discovery, Defendants' counsel wrote in the cover letter, "I do not believe any of the enclosed documents are directly responsive to a Request for Production of Documents but, because we may rely on the enclosed documents going forward, we wanted to produce them now." Clerk's No. 41-7 at 836.
[4] In their initial partial summary judgment motion, Defendants do not provide a complete list of the employees regarding whom summary judgment is sought. *See* Clerk's No. 39 at 12 ("Defendants are entitled to summary judgment for any claimed wages for Jirong Li, Xiao Qi Chen, Lan Lin, Zhao Shui Li, Zeng Xing Li, Li Rong Chen, Ai Mei Li, Shi Zhao Zheng, Xiu Ying Zhu and Liang Fang Dong, as well as the unnamed employees who provided the statements contained at Appendix pages 105 through 113."). A *complete* list is included in Defendants' reply brief. Clerk's No. 44-1 at 24, 27. Notably, Defendants list twenty-*five* employees in their reply brief; however, the inclusion of "Xue Quin Li" appears to be a misspelling and replication of "Xue Qin Li."

5

Defendants' second claim challenges an aspect of Plaintiff's calculation of unpaid wages. Clerk's No. 39 at 23. They seek a ruling that the calculations must be modified to account for the "tip credit" contemplated in 29 U.S.C. § 203(m).

Defendants' third claim asserts that Plaintiff has demanded damages beyond the permissible time period set out in the applicable statute of limitations. *See* 29 U.S.C. § 255(a).

### III. LAW AND ANALYSIS

The term "summary judgment" is something of a misnomer. *See* D. Brock Hornby, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273 (Spring 2010). Though it "suggests a judicial process that is simple, abbreviated, and inexpensive," in reality the process is complicated, time-consuming, and expensive.[5] *Id*. at 273, 281. The complexity of the process for determining whether summary judgment is appropriate, however, reflects the "complexity of law and life." *Id*. at 281. "Since the constitutional right to jury trial is at stake," judges must engage in a "paper-intensive and often tedious" process to "assiduously avoid deciding disputed facts or inferences" in a quest to determine whether a record contains genuine factual disputes that necessitate a trial. *Id*. at 281–82. Despite the seeming inaptness of the name and the desire for some in the plaintiffs' bar to be rid of it, the summary judgment process is well-accepted and appears "here to stay."[6] *Id*. at 281. Indeed, "judges are duty-bound to resolve legal disputes, no matter how close the call." *Id*. at 287.

---

[5] Indeed, Judge Hornby, a district court judge for the District of Maine, convincingly suggests that the name "summary judgment" should be changed to "motion for judgment without trial." 13 Green Bag 2d at 284.

[6] Judge Hornby notes that over seventy years of Supreme Court jurisprudence gives no hint that the summary judgment process is unconstitutional under the Seventh Amendment. 13 Green Bag 2d at 281 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) and *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627 (1944)). While he recognizes that not much can be done to reduce the complexity of the summary judgment process, he nonetheless makes a strong

"[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n.5 (8th Cir. 1975)).  The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627 (1944)).  Rather, it is designed to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div.*, *Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir. 1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir. 1975)).

The Court may not grant summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A fact is considered "material" if it "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) ("As to materiality, the substantive law will identify which facts are material . . . . Factual disputes that are irrelevant or unnecessary will not be counted.").  A dispute as to a material fact is considered "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677 (2009).  Therefore, "the plaintiff, to survive the defendant's motion,

---

case for improvements in it, including, amongst other things, improved terminology and expectations and increased pre-summary judgment court involvement. *See id.* at 283–88.

need only present evidence from which a jury might return a verdict in his favor." *Liberty Lobby*, 477 U.S. at 257 (1986).

On a motion for summary judgment, all facts and all inferences drawn from the facts "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)). Summary judgment must be denied "where the evidentiary matter in support of the motion . . . does not establish the *absence* of a genuine issue of fact." *Heath v. John Morrell & Co.*, 768 F.2d 245, 249 (8th Cir. 1985) (emphasis added). "[E]ven if no opposing evidentiary matter is presented," summary judgment is improper "if a genuine issue of material fact remains." *Id.*; *see Adickes v. Kress & Co.*, 398 U.S. 144, 160–61, 90 S. Ct. 1598, 1609–10 (1970). However, the mere existence of a factual dispute between the parties is not a sufficient defense against summary judgment unless the dispute is *genuine* and pertains to a *material* fact. *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989).

The party seeking summary judgment bears the initial burden of "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The moving party need not necessarily produce evidence to satisfy that burden. *See id.* However, the burden is high; it requires the moving party to "foreclose the possibility" that the nonmoving party might prevail on the facts when construed fully in the nonmoving party's favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970).

"In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Great*

*Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 944 (8th Cir. 2008) (quoting *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008)). Courts do not decide whether to grant a motion for summary judgment by conducting a paper trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) ("[A] district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe."). In considering a motion for summary judgment, the court's task is merely to decide, based on the evidentiary record that accompanies the filings of the parties, whether there really is any genuine issue concerning a material fact that still requires a trial. *See id.* (citing *Liberty Lobby*, 477 U.S. at 249 and 10 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2712 (3d ed. 1998)); *see also* Fed. R. Civ. P. 56(c)(3).

If a genuine dispute remains regarding liability—i.e., that Defendants violated FLSA provisions or failed to pay the full wages required by law—then summary judgment must be denied. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S. Ct. 1187, 1193 (1946) ("[If liability can be established, t]he uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.'" (quoting *Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250 (1931))). Defendants' arguments pertaining to the amount of damages that may or may not be awarded are therefore insufficient standing alone to support summary judgment. *See id.*

The Court applies these principles of law to each of Defendants' three asserted bases for partial summary judgment.

A. Lack of Evidence Regarding Certain Employees

In the Complaint, Plaintiff alleges, "Employees worked approximately 72 hours per week[,] . . . were paid less than $7.25 per hour for all hours worked[, and] . . . were not paid an overtime premium for any hours worked." Clerk's No. 1 at 3–4. Defendant argues Plaintiff's claim is entirely "unsupported by admissible evidence" as to twenty-four of the employees listed in the Complaint.[7] Clerk's No. 10. Defendants concede that there is some evidence in the record supporting the allegations of FLSA liability described in the Complaint.[8] *See* Clerk's No. 39 at 10. They argue, however, that such evidence is inadmissible, runs afoul of due process, and should not be considered in determining their summary judgment motion. *Id.* at 10, 12–13.

The evidence supporting Plaintiff's allegations as to the twenty-four employees at issue consists primarily of witness statements made by numerous Spanish-speaking employees alleging that all kitchen staff and wait staff worked the same hours: twelve hours per day, six days per week. *Id.* at 113, 121, 131, 149, 153, 158. Those statements are corroborated directly and circumstantially by the observations of WHD investigators, various inconsistencies in statements made by Chinese-speaking employees and Defendants Li and Zheng, and at least one

---

[7] Insofar as Defendants' motion insinuates summary judgment is required unless Plaintiff has shown that each individual employee worked precisely 72 per week in fact, the Court rejects that suggestion. *See* Clerk's No. 39 at 10. Plaintiff need only demonstrate that Defendants may be liable for violating FLSA provisions to survive summary judgment at this stage. *See Mt. Clemens.*, 328 U.S. at 688. To survive summary judgment, "[i]t is enough . . . if there is a basis for a reasonable inference as to the extent of the damages." *Id.* Therefore, in deciding this aspect of Defendants' motion, the Court may not render a determination on either the precise quantum or calculation of damages. Rather, the Court need only determine whether there is evidence that could support a reasonable inference of damages and whether there remains a genuine issue of material fact pertaining to Defendants' alleged violations of FLSA minimum-wage, overtime, and record-keeping provisions.

[8] Though Defendants allege that Plaintiff "has no evidence to support a claim for back wages," they also acknowledge WHD's investigatory records and the testimony of other employees, which do in fact support Plaintiff's claim. *See* Clerk's No. 39 at 10, 12.

10

additional statement made by a part-time English-speaking employee. *See* Clerk's Nos. 33-5 at 9, 33-10 at 31, 41-3 at 96, 105–61, 163–67. The evidence is contradicted, however, by the witness statements of some of the Chinese-speaking employees, the pay records provided by Defendants, and the ten declarations sent to Plaintiff on June 8, 2015. *See* Clerk's Nos. 33-28 through 33-124, 41-3 at 125, 130, 140.

Defendants argue that the evidence supporting the Complaint must be disregarded, leaving only their contrary evidence to be considered by the Court in deciding the motion for partial summary judgment. The Court disagrees, and it concludes for the reasons expressed herein that all the evidence listed above must be evaluated to make a proper determination on the motion.

First, Defendants argue their time and payment records should be considered unassailable evidence of actual hours worked as a matter of law because Plaintiff's evidence "is not sufficient to challenge" them. Clerk's No. 39 at 15. To the contrary, Plaintiff's evidence—including the investigative findings of WHD and the inconsistencies between Defendant's asserted record-keeping practices and employees' statements—is at least sufficient to generate a genuine issue of material fact concerning the accuracy of Defendants' records and the hours worked by the employees at issue. *See* Clerk's No. 41-3 at 4, 125, 140, 171. The record contains at least circumstantial evidence that the actual hours worked by the listed employees could have been ten to twelve hour shifts and up to six days a week, constituting clear FLSA violations. *See id.* Contrary to Defendant's claim, Plaintiff need not affirmatively prove both the inaccuracy of Defendants' time and payment records and the precise and actual hours worked by each

employee in order to survive summary judgment.[9]  *See* Clerk's No. 39 at 14–16.  Plaintiff need only show a genuine issue of material fact remains to be tried concerning the accuracy of those records to survive summary judgment.  Fed. R. Civ. P. 56.  Plaintiff has satisfied that requirement.

Second, Defendants argue this Court should not consider any of the evidence presented in support of Plaintiff's claims that the twenty-four employees at issue were underpaid because it is "[r]epresentative evidence[, which] may only be used to the extent it is reliable."  Clerk's No. 39 at 17.  "Representative evidence" in the context of this case is "a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records"—i.e., evidence of employees working up to 72 hours per week coupled with evidence showing that most or all employees worked the same weekly schedule.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016).

Under *Mt. Clemens*, "[Plaintiff] can present testimony from representative employees as part of his proof of the prima facie case."  *Reich v. S. Maryland Hosp., Inc.*, 43 F.3d 949, 951 (4th Cir. 1995); *see also Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 798–99 (8th Cir. 2014), *aff'd*, 136 S. Ct. 1036 (2016); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1279 (11th Cir. 2008); *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 67–68 (2d Cir. 1997); *Donovan v. Burger King Corp.*, 672 F.2d 221, 224 (1st Cir. 1982); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973).  "A representative . . .

---

[9] Defendants cite *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 688, 66 S. Ct. at 1193, in asserting that their time sheets and payment records should be presumed accurate and that such a presumption can only be overcome by offering contradictory formal time or pay records "showing time actually worked."  Clerk's No. 39 at 16.  To the contrary, *Mt. Clemens* makes clear that questions of actual hours worked are "purely . . . factual issue[s]." *See Mt. Clemens*, 328 U.S. at 689, 66 S. Ct. at 1193.  *Mt. Clemens* does not support disposal of the questions raised in this case by presumption or as a matter of law.

sample, like all evidence, is a means to establish or defend against liability." *Tyson Foods*, 136 S. Ct. at 1046. The Court may not consider any evidence, representative or otherwise, on a summary judgment motion if the evidence is inadmissible. *See* Fed. R. Civ. P. 56(c)(2); *Brown v. Trans World Airlines, Inc.*, 746 F.2d 1354, 1358 (8th Cir. 1984) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* §§ 2721, 2725 (1983)). Admissibility of representative evidence "turns . . . on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Tyson Foods*, 136 S. Ct. at 1046 (citing Fed. Rs. Evid. 401, 403).

Defendants assert that the representative evidence presented in this case is not sufficiently reliable and is therefore inadmissible. Clerk's No. 39 at 19–22. The Court rejects Defendants' arguments. Defendants first assert the witnesses whose statements support the Complaint "do not have the knowledge to testify . . . on behalf of" the twenty-four employees at issue. Clerk's No. 39 at 19. However, Plaintiff has presented statements from both kitchen staff and wait staff that their peers and coworkers—with whom they interacted directly nearly every day—worked identical hours. *See* Clerk's No. 41-3 at 117, 126–27. Additionally, contrary to Defendants' insistence throughout WHD's investigation that they were in compliance with FLSA requirements, Plaintiff has presented evidence that Defendants' actual pay practices were not consistent even with their own recordkeeping. *See id.* at 166–67. Evidence of the irregularities in Defendants' payment practices elevate WHD's conclusions beyond mere "speculation" as alleged by Defendants. Clerk's No. 39 at 19–20.

The Court concludes that the representative evidence presented by Plaintiff in this case is admissible. "Once a district court finds [representative] evidence to be admissible, its persuasiveness is, in general, a matter for the jury. Resolving that question . . . is the near-

exclusive province of the jury." *See Tyson Foods*, 136 S. Ct. at 1049. Therefore, the Court cannot grant summary judgment based on Defendants' claims that the representative witnesses lack requisite knowledge or that WHD's findings were speculative; neither claim is an accurate statement of the record. The representative evidence generates a genuine dispute as to numerous material facts, including the number of hours the twenty-four listed employees worked each week and the amount of payment they received for their work.

Defendants next assert that WHD's report and investigation are themselves unreliable wholesale and should not be considered in deciding the present motion. *See* Clerk's No. 39 at 19–22; *see also* Fed. R. Evid. 803(8) (providing government investigatory reports are admissible evidence, not excluded by the rule against hearsay, unless "the source of information or other circumstances indicate a lack of trustworthiness"). In arguing that the reports and investigation are unreliable, Defendants unreservedly invoke the specter of racial animus to impugn the integrity WHD's investigation. Defendants argue that WHD's investigation proceeded based on its fundamental belief that "all Chinese employees must be lying." *See* Clerk's No. 39 at 10, 15, 22; *see also* Clerk's No. 44-1 at 5, 29.

The Court sees no evidence in the record of any such racial animus or "ethnic generalizations." Clerk's No. 44-1 at 29. WHD's reports do reflect the investigators' conclusion that the employees who insisted they worked less than forty hours per week were likely being untruthful, but the record is replete with circumstantial evidence suggesting that those employees were incentivized to lie to the investigators. The evidence shows that the Chinese-speaking employees relied on Defendants for transportation and housing. *See* Clerk's Nos. 41-3 at 96, 41-7 at 860–63. Several of the employees at issue are Defendants' family members. *See* Clerk's Nos. 41-2 at 15–16, 45 at 11. This evidence gives rise to a fair inference that Defendants exerted

intimate control and immense leverage over many of their employees, and Defendants could have used that leverage to incite those employees to be uncooperative with WHD's investigation. *See Matsushita*, 475 U.S. at 587 ("[A]ll inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the [summary judgment] motion."). Indeed, the record suggests that Defendants instructed their employees not to speak with the investigators, and one employee opined that his fellow employees were "afraid to speak to people about their rights." *See* Clerk's No. 41-3 at 126, 145, 158.

In light of this evidence, the Court rejects Defendants' suggestion that WHD's mistrust of some employees' statements and declarations was motivated by any considerations other than the unique circumstances of this case. Therefore, the investigators' reports, findings, and conclusions are not fundamentally unreliable nor do they lack trustworthiness such that they are inadmissible as evidence. *See* Fed. R. Evid. 803(8); *Brown*, 746 F.2d at 1358. The Court concludes WHD's reports and findings are admissible[10] and must be fully considered in properly ruling on the present partial summary judgment motion.

Plaintiff has presented admissible evidence, both direct and representative, showing that Defendants may be liable for FLSA violations relating to the twenty-four employees listed in Defendants' motion and reply. Genuine issues of material fact remain regarding the alleged

---

[10] The Court's conclusion that WHD's reports and documents are admissible evidence does not foreclose Defendants from attacking the credibility of that evidence at trial. However, it is well established that the court is not to engage in credibility determinations or a weighing of the evidence when deciding a motion for summary judgment. *See Liberty Lobby*, 477 U.S. at 249; *Johnson Farm Equip. Co. v. Cook*, 230 F.2d 119, 123 (8th Cir. 1956). Defendants' motion for partial summary judgment and Plaintiff's response both raise numerous credibility questions about the evidence presented by the opposing party, but it is not within the province of the Court to make such determinations on summary judgment.

violations. Therefore, Defendants' motion for partial summary judgment pertaining to those employees must be denied.

### B. FLSA Tip Credit

Defendants also seek partial summary judgment as to any amount of back wages allegedly owed to employees who were paid partially with tips. Clerk's No. 39 at 23–24. Pursuant to the FLSA,

> [i]n determining the wage an employer is required to pay a tipped employee, the amount . . . shall be an amount equal to—(1) the cash wage paid such employee . . . ; and (2) an additional amount on account of the tips received by such employee . . . . The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C.A. § 203(m). This alternative calculation of wages for tipped employees is known as the "tip credit." Defendants argue that Plaintiff improperly calculated its estimation of back wages owed by refusing to apply the tip credit to all wages earned by tipped employees. Clerk's No. 39 at 23–24. Plaintiff concedes he has applied the tip credit to "all hours shown on the payroll" for tipped employees while declining to apply the tip credit to "hours worked but *not* paid." Clerk's No. 41 at 15.

The statutory language creating the tip credit contemplates its application to "a tipped employee." 29 U.S.C. § 203(m). There is no indication that the tip credit may be applied ad hoc to discrete hours worked by an individual employee, and Plaintiff has not provided any authority supporting such an application. The plain language of the statute appears to require that the tip credit be applied uniformly to *all* hours worked by a tipped employee. *Id.* Therefore, Plaintiff's piecemeal application of the credit is not permitted by the statute.

However, Plaintiff notes that he "has not conceded the issue that Defendants failed to provide proper notice as mandated by 29 U.S.C. § 203(m)." Clerk's No. 41 at 16. As a result, there remains a genuine issue of material fact concerning whether the tip credit applies to any of Defendants' employees. Additionally, Defendants' motion concerns the application of the tip credit to calculate the amount of damages, not the predicate question of liability under the FLSA. Insofar as there remains a genuine issue of material fact concerning application of the tip credit and the application thereof concerns only the amount of alleged damages, *see Mt. Clemens*, 328 U.S. at 688, Defendants' motion for partial summary judgment on this issue is denied.

C. Statute of Limitations

The Complaint demands damages calculated in part "for the period of March 5, 2012, to March 24, 2014." Clerk's No. 1 at 5. This action is subject to a limiting statute requiring any action "be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). This action was initiated on April 28, 2015, and Defendants therefore allege that "any claim for damages prior to April 28, 2012, must be dismissed." Clerk's No. 39 at 24. Plaintiff appears to concede Defendants' point on this matter; in his response brief, Plaintiff notes that "at trial he will be seeking damages starting from April 28, 2012." Clerk's No. 41 at 17. Defendants' motion for partial summary judgment on this matter is therefore granted.[11] Plaintiff's claims seeking damages for FLSA violations for the period of March 5, 2012, to April 27, 2012, are dismissed.

---

[11] In granting summary judgment on any claim for damages preceding April 28, 2012, the Court does not reach the issue of whether any alleged violations were willful. *See* 29 U.S.C. § 255(a). Defendants may argue in future proceedings that any violation was not willful and therefore subject to a *two*-year statute of limitations. See *id.*; Clerk's No. 44-1 at 37.

17

IV. CONCLUSION

Defendants' motion for partial summary judgment (Clerk's No. 33) concerning Plaintiff's allegations of FLSA violations in relation to the twenty-four listed employees, *see* Clerk's No. 44-1 at 27, is DENIED.

Defendants' motion for partial summary judgment (Clerk's No. 33) concerning Plaintiff's claim for back wages calculated by a misapplication of the tip credit statute is DENIED.

Defendants' motion for partial summary judgment (Clerk's No. 33) concerning Plaintiff's claim for back wages owed and accrued prior to April 28, 2012, is GRANTED.

IT IS SO ORDERED.

Dated this 21st day of April, 2017.

_____
ROBERT W. PRATT, Judge
U.S. DISTRICT COURT